## Angelo J. Bartolone, Appellant, v Lynne A. L. Jeckovich et al., Respondents.

Fourth Department, November 7, 1984

### APPEARANCES OF COUNSEL

*Bartolomei & Del Monte, P. C. (John J. Del Monte* of counsel), for appellant.

*Phelps, Gray & Hewitt (Benjamin N. Hewitt* of counsel), for respondents.

### OPINION OF THE COURT

Denman, J.

On October 4, 1976, plaintiff was involved in a four-car chain reaction collision in Niagara Falls for which defendants were found liable. Plaintiff sustained relatively minor injuries consisting of whiplash and cervical and lower back strain for which he was treated with muscle relaxants and physical therapy but was not hospitalized. Subsequently, however, he suffered an acute psychotic breakdown from which he has not recovered. The theory on which plaintiff's case was tried was that the accident aggravated a preexisting paranoid schizophrenic condition which has totally and permanently disabled him. The jury returned a verdict of $500,000 in plaintiff's favor. The court granted defendants' motion to set aside the verdict

and ordered a new trial unless plaintiff would stipulate to a reduced verdict of $30,000. Plaintiff refused and took this appeal. The order should be reversed and the verdict reinstated.

At the time of the accident, plaintiff was a 48-year-old man who lived alone in one room and worked out of a union hall as a carpenter. He was very proud of his physique and his strength, spending on the average of four hours daily at the local YMCA engaged in body building. On weekends, in order to conserve his strength, he pursued nonphysical interests such as painting and sculpture, singing and playing the guitar and trombone. Since the accident, plaintiff has been in a degenerative psychotic condition in which he is withdrawn, hostile, delusional, hears voices and sees shadows, refuses to cut his hair, shave or bathe and no longer participates in any of his former interests. Io the words of his treating psychiatrist, he is "a life lost".

Three psychiatrists and one neurosurgeon testified on behalf of plaintiff. From their testimony a strange and sad profile emerged: Plaintiff's mother had died of cancer when he was a very young boy. His sister had also died of cancer. Probably as a consequence, plaintiff had developed a fear and dislike of doctors and engaged in body building in order to avoid doctors and ward off illness. His bodily fitness was extremely important to him because it provided him with a sense of control over his life so that he was able to function in a relatively normal way. He had adopted a life-style in which he was something of a "loner", but he was self-supporting, had no complaints and lived a rather placid existence. After the accident, although his physical injuries were minor, he perceived that his bodily integrity was impaired and that he was physically deteriorating. Because he had such an intense emotional investment in his body, his perception of this impairment made him incapable of his former physical feats and he was thus deprived of the mechanism by which he coped with his emotional problems. As a consequence, he deteriorated psychologically and socially as well. He increasingly isolated himself and felt himself to be a victim of powerful forces over which he had no control. It was the consensus of plaintiff's medical experts that he had suffered from a

preexisting schizophrenic illness which had been exacerbated by the accident and that he was now in a chronic paranoid schizophrenic state which is irreversible.

Defendants' expert, who had never seen the plaintiff, even at trial, agreed that plaintiff suffered from schizophrenia but stated that, in his opinion, it had not been exacerbated by the accident and that defendant was merely attempting to make money. The jury, who had an opportunity to see the plaintiff and hear his testimony, returned a verdict of $500,000. The court set that verdict aside stating that there was no basis on which the jury could conclude that plaintiff's total mental breakdown could be attributed to a minor accident.

We find, to the contrary, that there was ample proof in the record to support the jury's verdict. There is precedent for such determination. In *Bonner v United States* (339 F Supp 640), plaintiff was a passenger in a car which was rear-ended. She received a whiplash injury resulting in cervical spasms and lumbar-sacral strain for which she was treated with muscle relaxants and physiotherapy. She later developed numbness, headaches, hearing difficulties, inability to keep her eyes open, deteriorated personal hygiene, degeneration in appearance, facial tics and jerking and twitching of her head, all of which were determined to be of a psychological rather than neurological origin. The psychiatric testimony established that she had a preexisting underlying psychotic illness with which she was able to cope until the accident but that the accident had precipitated a chronic psychosis which was totally disabling.

In *Steinhauser v Hertz Corp.* (421 F2d 1169), plaintiff, a 14-year-old girl, was riding as a passenger in a car with her parents when it was struck by another vehicle. The occupants did not suffer any bodily injuries. Within minutes after the accident, plaintiff began to behave in a bizarre manner. After a series of hospitalizations, she was diagnosed as suffering from a "schizophrenic reaction — acute — undifferentiated." The other evidence at trial was similar to the evidence in the case before us. Prior to the accident she had a " 'prepsychotic' personality" and displayed a predisposition to abnormal behavior (*supra,* p 1171). Nevertheless, there was testimony that, had it not

been for the accident, she might have been able to lead a normal life and that the accident was the precipitating cause of her psychosis. The trial court did not allow plaintiff's counsel to elicit testimony as to whether the accident could have been an aggravating cause of her condition. In reversing a verdict of no cause for action, the United States Court of Appeals for the Second Circuit stated that the evidence made clear that plaintiff had some degree of pathology which was activated into schizophrenia by the emotional trauma connected with the accident and that she was entitled to have that issue fairly weighed by a jury.

The circumstances of those cases as well as those of the case before us illustrate the truth of the old axiom that a defendant must take a plaintiff as he finds him and hence may be held liable in damages for aggravation of a preexisting illness (see *McCahill v New York Transp. Co.,* 201 NY 221). Nor may defendants avail themselves of the argument that plaintiff should be denied recovery because his condition might have occurred even without the accident (see *McCahill v New York Transp. Co.,* 201 NY 221, 223-224, *supra;* see, also, *Monahan v Weichert,* 82 AD2d 102, 108).

The record presents ample evidence that plaintiff, although apparently suffering from a quiescent psychotic illness, was able to function in a relatively normal manner but that this minor accident aggravated his schizophrenic condition leaving him totally and permanently disabled.

Accordingly, the order should be reversed and the jury's verdict reinstated.

CALLAHAN, J. P., BOOMER, GREEN and SCHNEPP, JJ., concur.

Order unanimously reversed, with costs, motion denied and verdict reinstated.