JOHN W. BIALIK et al., Plaintiffs, v E. I. DUPONT DE MOURS & COMPANY, INC., Defendant.

Supreme Court, Niagara County, October 24, 1988

### APPEARANCES OF COUNSEL

*Toohey & O'Toole* for plaintiffs. *Phillips, Lytle, Hitchcock, Blaine & Huber* for defendant.

### OPINION OF THE COURT

JOSEPH J. SEDITA, J.

This is a motion for summary judgment.

The plaintiff has alleged a number of causes of action which allegedly occurred during his employment with the defendant corporation. The first cause of action was dismissed in Federal

court. The remaining causes of action were remanded to State court. The plaintiffs appear to have chosen only to defend the cause of action which asserts intentional infliction of mental distress and the derivative cause of action which relates thereto.

This case might be aptly described as a "whistleblower" case.

Plaintiff asserts that he and other co-workers complained about unsafe working conditions in defendant's boiler house. Said complaints were allegedly made to a fire and safety inspector and to defendant's safety personnel. These complaints were allegedly made in early August of 1982. On October 31st of that year, a "chlorine release" occurred at the plant which injured several people and caused the death of one young woman.

Prior to the accident, plaintiff alleges that an improper disciplinary action was taken against him. He alleges that defendant's representatives tried to blame the accident on him. These and other company actions allegedly resulted in physical and mental problems which were caused by the stress of his work situation.

In early November of 1982, the defendant company attempted to terminate the plaintiff from his employment. As a result of a grievance which was filed by him, he was offered a reinstatement package, which included a provision that he would be placed on disability. He was reinstated and placed on full disability from March 30, 1983 until August 2, 1983. He began working part time on August 2, 1983 and was given additional training. In January of 1984 it was determined by the company that he would never be able to work on the plant boilers again. He was placed on defendant's disability wage plan for six months. On July 10, 1984, he was notified by letter that his employment was terminated because his disability was indefinite in length. He commenced this lawsuit on August 28, 1984.

Plaintiff asserted several causes of action. Suit was initially brought in Federal court where summary judgment was granted to the company and the union on a cause of action asserting that the collective bargaining agreement had not been complied with. The other causes of action were remanded to State court for determination.

The only causes of action which the plaintiff has defended in his briefs is the cause of action for intentional infliction of

mental distress and its derivative cause of action by plaintiff's wife.

The defendant seeks summary judgment on a number of grounds. One ground is that the Statute of Limitations has run on this cause of action. A second ground is Federal preemption. First let us note that a Federal court has specifically referred this matter to State court. There was no determination that this cause of action was solely a Federal issue or subsumed in the first cause of action (which was dismissed by the Federal Judge). In fact, the Federal Judge specifically referred this cause of action to State court. This would appear to be an implicit determination that these remaining causes of action are subject to determination by our State courts.

In addition, we note that in a fairly recent and analogous "whistleblower" case, a Federal appellate court held that the State had an interest in the safety of its citizens *(Garibaldi v Lucky Food Stores,* 726 F2d 1367 [1984]). In *Garibaldi (supra),* the employee was allegedly fired after he reported his employer's adulterated milk to public health officials. We are all too well aware of the dangers to all citizens and to the environment posed by chemical accidents. The State, we feel, clearly has an interest in this area which is not preempted by Federal law.

The next issue is whether or not the Statute of Limitations has run on this cause of action. The defendant notes that a one-year Statute of Limitations is applicable under a recent ruling by the Fourth Department of the Appellate Division *(Goldner v Sullivan, Gough, Skipworth, Summer & Smith,* 105 AD2d 1149 [1984]). They additionally point out that this particular cause of action requires extreme and outrageous conduct which would be regarded as atrocious and intolerable in a civilized community. *(Murphy v American Home Prods. Corp.,* 58 NY2d 293.)

Defendant next argues that the only conduct which could arguably be described as "extreme" or "outrageous" took place in 1982, well outside the one-year period of the applicable Statute of Limitations. *(See, Koster v Chase Manhattan Bank,* 609 F Supp 1191 [1985].)

Plaintiff's affidavit and other information submitted on this motion alleges irritations and irregularities in his treatment by defendant's representatives but the conduct, on the surface, would be difficult to classify as "extreme" or "outrageous".

In making this determination, however, we have found no

case which establishes that an objective rather than subjective (or relativistic) standard should be applied to determine if behavior is "extreme" or "outrageous". This appears to be a case of first impression.

"Outrageous" might well be in the minds of the parties. For example, it's "outrageous" to require a person terrified of heights to climb a high ladder, but this same requirement might be considered playful exercise by a young athlete. Whether or not the allegedly tortious conduct was intentional would depend on what the perpetrator knew about the mental state of the complainant. As applied to our example, a tortfeasor who knew that the complainant was terrified of heights, and despite this, ordered him to climb a high ladder, might be reasonably found to be engaging in outrageous behavior.

We note the well-known legal maxim that one takes a plaintiff as one finds him (or her). An aggravation of an existing condition, if causally related to the tortious conduct, may be recoverable (see, 36 NY Jur 2d, Damages, § 62). In a recent opinion by Justice Denman of the Fourth Department, a minor accident triggered a severe psychological reaction. The plaintiff was, in fact, a "mental eggshell". The Fourth Department reversed the trial court which had reduced the substantial jury verdict (Bartolone v Jeckovich, 103 AD2d 632 [1984]).

It is our considered opinion that a subjective test must be utilized in determining whether the conduct by the defendant during the year prior to the commencement of the lawsuit was "extreme" or "outrageous" in light of the plaintiff's mental condition and their knowledge of his mental condition.

Looking at the facts in a light most favorable to plaintiff presents a picture of a "mental eggshell" ready to be cracked. The defendant was well aware of the plaintiff's difficulties. The affidavit of the plaintiff asserts that requirements were placed on him after his return to employment which were not placed on the other comparable employees. Letters from the plaintiff's psychiatrist indicate a compounding of psychological problems directly related to his work situation. Although the worst of the alleged conduct by the defendant's representatives took place over a year prior to the commencement of the lawsuit, that conduct helped create the allegedly weak mental state of the plaintiff during the time of employment, including the year within which the lawsuit was commenced.

It would appear that a factual issue clearly exists as to whether or not the defendant's conduct was outrageous under the unique circumstances of this case. Did defendant know that it was dealing with a "mental eggshell", and that very little pressure would be require to "crack" that shell? Did they, in fact, crack or further crack that thin shell by their intentional conduct after he returned to work?

Summary judgment is a drastic remedy which should be employed only when there is no doubt as to the absence of triable issues *(Andre v Pomeroy,* 35 NY2d 361; *Moskowitz v Garlock,* 23 AD2d 943).

The key role of the court is, of course, issue finding rather than issue determination *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395). In order to deny a summary judgment motion the court need only determine that a factual issue "arguably" exists *(Capelin Assocs. v Globe Mfg. Corp.,* 34 NY2d 338).

It is the considered opinion of this court therefore that factual issues exist which preclude the granting of this motion as relating to the second cause of action.

Accordingly, the motion for summary judgment is denied as to the second cause of action, and as to the wife's derivative cause of action. All other causes of action should be dismissed.