■ DOLORES PEREZ et al., Respondents, v MILCIADEZ RODRIGUEZ, Appellant, et al., Defendants. [809 NYS2d 15]—

Order, Supreme Court, Bronx County (Alan J. Saks, J.), entered March 22, 2004, which, to the extent appealed from, denied defendant Milciadez Rodriguez's cross motion for summary judgment dismissing the complaint as against him on the ground that plaintiffs failed to meet the serious injury threshold of Insurance Law § 5102 (d), reversed, on the law, without costs, the cross motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

This is a personal injury action which arises out of a motor vehicle accident that occurred on November 7, 1999. Plaintiff Dolores Perez alleges that she was a passenger in a vehicle driven by defendant Rodriguez when it struck the rear of a vehicle owned by defendant Silver Spring Service, Inc. and operated by defendant Pablo Sandoval. Plaintiff was apparently treated at the scene of the accident by an "emergency crew" but was not hospitalized. Plaintiff thereafter sought treatment at Webster Comprehensive Medical, P.C., which visits lasted approximately five months.

Plaintiff subsequently commenced this action in October 2000, asserting that she had sustained a serious injury as defined in Insurance Law § 5102 (d). Defendants Sandoval and Silver Spring, after issue was joined, moved to dismiss the complaint as against them on the ground that they had no liability as a matter of law since Rodriguez's vehicle hit their vehicle in the rear while it was stopped. Rodriguez then cross-moved to dismiss the complaint as against him on the ground that plaintiff did not sustain a serious injury. The motion court granted Sandoval and Silver Spring's motion, which disposition is not within the scope of this appeal, but denied Rodriguez's cross motion. We disagree with the motion court insofar as it denied the cross motion and, accordingly, reverse.

The Court of Appeals has oft-stated that the " 'legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries' " (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002], quoting *Dufel v Green*, 84 NY2d 795, 798 [1995]). The issue of whether a claimed injury falls within the statutory definition of a "serious injury" is a question of law for the courts which may be decided on a motion for summary judgment (*Licari v Elliott*, 57 NY2d 230, 237 [1982]; *Martin v Schwartz*, 308 AD2d 318, 319 [2003]). Once the proponent of a motion for summary judgment has set forth a prima facie case that the claimed injury is not serious,

the burden shifts to the plaintiff to demonstrate, by the submission of objective proof of the nature and degree of the injury, that he/she did sustain such an injury, or that there are questions of fact as to whether the purported injury was "serious" (*Toure*, 98 NY2d at 350; *Cortez v Manhattan Bible Church*, 14 AD3d 466, 467 [2005]; *Martin v Schwartz, supra*). However, "even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury—*such as a gap in treatment . . .* summary dismissal of the complaint may be appropriate" (*Pommells v Perez*, 4 NY3d 566, 572 [2005] [emphasis added]).

Initially, we find that defendant shouldered his burden of proof that plaintiff did not sustain a serious injury, within the statutory definition, by the submission of reports from Doctors Dick, Krishna and Eisenstadt, who are, respectively, an orthopedist, neurologist and a radiologist. Doctor Dick found, after examining plaintiff, that despite her claims herein, "there is no evidence of injury to the cervical spine, lumbosacral spine, left shoulder or left knee. All injuries allegedly related to the accident . . . are resolved by objective clinical criteria . . . Based on today's examination, it is my opinion that [plaintiff] is not disabled." Dr. Krishna concluded that: plaintiff had sustained sprain/strain of the cervical and lumbosacral areas, which had resolved; objective findings indicated that plaintiff's "neurological perspective was normal" and she required no further treatment; and plaintiff "is capable of performing all activities of daily living, and is capable of gainful employment without restrictions." Dr. Eisenstadt noted that plaintiff had a normal MRI study of the left knee and as for her lumbar spine, Dr. Eisenstadt found normal lumbar alignment, with desiccation in the intervertebral discs at the L4-5 level, as well as a small central disc herniation at the L4-5 level. Dr. Eisenstadt determined, however, that the desiccation indicated preexisting degenerative disease which takes months to years to develop.

In response, plaintiff, in addition to her own affidavit, submitted an affirmation from Dr. Jay Zaretsky, an orthopedic and arthropedic surgeon, who examined plaintiff on April 25, 2003, approximately $3^{1}/_{2}$ years after the accident, more than three years after she discontinued treatment at Webster Comprehensive, and in response to defendant's cross motion. Dr. Zaretsky, however, never stated that he reviewed plaintiff's MRI films and, apparently, relied solely on the unsworn reports of the doctors who reviewed those films three years earlier. Dr. Zaretsky also neglected to discuss the prolonged gap in plaintiff's treatment and, indeed, exacerbated the significance of that unex-

plained gap by stating that plaintiff "is permanently disabled as a result of the automobile accident of November 7, 1999, her condition is chronic and permanent and she has suffered partial but significant impairments to the spine, shoulder and left knee *which requires surgery and will necessarily require future medical care at least in the nature of therapy and steroid injections*" (emphasis added). Moreover, plaintiff's assertions that when she returned to work at the beauty salon (she could not remember when that was) she could only work for 1½ hours and could no longer blow-dry hair are merely subjective complaints based upon her testimony, and are unsupported by medical evidence.

Given the absence of admissible evidence that plaintiff suffered a serious injury in 1999, when the accident occurred, the utter failure to explain the gap in plaintiff's medical treatment, and the lack of objective evidence that plaintiff suffered permanent loss of use or permanent consequential limitation of use of a body organ, member or function, or impairment in her daily activities for 90 days in the 180-day period following the accident (Insurance Law § 5102 [d]), the complaint must be dismissed. Concur—Buckley, P.J., Nardelli, Williams and Catterson, JJ.

Saxe, J., dissents in a memorandum as follows: The motion court's denial of summary judgment, on the ground that issues of fact exist as to whether plaintiff suffered a serious injury as defined in Insurance Law § 5102 (d), should be affirmed. Plaintiff's showing included sufficient objective medical evidence of serious physical injury, including the results of MRIs and physical range of motion assessments, to avoid dismissal at this juncture.

Plaintiff Dolores Perez was allegedly injured on November 7, 1999, when the vehicle in which she was a passenger, which was operated by defendant Milciadez Rodriguez, struck another vehicle. The radiating pain she began to experience immediately following the accident, in her shoulders, arms, buttocks and legs, has, according to her deposition testimony and affidavit, continued virtually unabated. Beginning two days after the accident, plaintiff was tested and treated by various medical practitioners at the clinic she consulted, Webster Comprehensive Medical, P.C. The clinic also referred her for MRIs of the cervical spine, lumbosacral spine, and left knee, and electrodiagnostic tests.

The MRI of the cervical spine, which was performed on November 16, 1999, revealed an anterior disc herniation at C5-C6 level, and a reversal of the normal cervical curve due to muscular spasm. An MRI of the lumbosacral spine performed

on December 14, 1999 revealed a focal disc herniation at the L4-L5 level. An MRI of the left knee performed on February 17, 2000, revealed an interstitial tear involving the posterior horn of the medial meniscus. Although a nerve conduction report and EMG report on December 7, 1999 indicated no abnormalities, a physical musculoskeletal examination performed on that date disclosed myospasm in numerous paraspinal muscles upon palpation, with a positive Spurling's sign on the left side, positive results of a straight leg test on the left side, and positive results of an opposite straight leg raise test. The examining physician at the December 7, 1999 examination observed measurable restrictions in plaintiff's active and passive range of motion in lateral bending, flexion, extension and rotation, with a particularly limited lumbar range of motion due to pain and spasm.

Plaintiff continued to attend Webster Comprehensive Medical for various types of therapy several times each week for the five months after the accident, otherwise remaining at home for the most part, often in bed. During the first three weeks, she wore a brace for her neck; for four weeks she wore a brace for her leg; and she has continually worn a brace for her waist. She has also continually performed her home exercises. But the pain has persisted.

On March 29, 2000, a document entitled "final examination report" was issued by Webster Comprehensive. It fails to indicate any resolution, or any plan for resolution or relief of plaintiff's medical condition. Yet, by the use of the term "final" in the heading, it implicitly presents a view of plaintiff as a patient for whom nothing more can be accomplished beyond what amelioration is achieved by the continued use of at-home exercises and over-the-counter analgesics. Indeed, plaintiff states that she continues to employ prescribed therapeutic exercises at home as directed, although with little relief resulting.

When after the first five months plaintiff returned to work at her hair styling salon, she did so because of financial pressures. However, even then she could only work for an hour and a half, due to the pain she continues to experience in her back, arm and leg, and she is unable to blow-dry hair because of the resulting pain and numbness. To date, she cannot bend, sit or stand for an extended period. Nor is she able to perform without pain most of the normal household tasks she performed before the accident: she cannot do the lifting and carrying that is entailed in doing laundry and grocery shopping, or the physical motions needed to vacuum, clean, hang curtains, or move furniture. Nor can she enjoy marital relations with her husband without pain.

Taking the test results, physiological observations, and plaintiff's subjective complaints together, a claim of serious physical injury is sufficiently made out to create a question of fact. It is true that "the existence of a herniated disc does not per se constitute serious injury" (*Noble v Ackerman*, 252 AD2d 392, 394 [1998]), so that claims may be dismissed for lack of serious injury in the absence of proof that the herniated disc has substantially affected the plaintiff's physical abilities (*see Kearse v New York City Tr. Auth.*, 16 AD3d 45 [2005]). However, here, not only is there proof of anterior disc herniation with adjacent spondylitic change at C5-C6, and a focal disc herniation at L4-L5, as well as an interstitial tear involving the posterior horn of the medial meniscus. Additionally, testing performed shortly after the accident, in conjunction with the diagnosis and treatment of plaintiff's injuries, disclosed significant range-of-motion reductions confirmed not just by reports of pain, but by muscle spasms.

Moreover, those results were confirmed when plaintiff went for another consultation on April 25, 2003 with orthopedic surgeon Jay R. Zaretsky in the course of the litigation. This orthopedist affirmed that he not only reviewed plaintiff's medical records, including the MRIs, but also conducted a physical examination, the results of which confirmed that the herniated discs and torn meniscus have substantially affected plaintiff's physical abilities. As in the examination on December 7, 1999, Dr. Zaretsky observed muscle spasms resulting from palpation of the paralumbar musculature, with extremely limited forward flexion and bending capability to left and right. The continued damage to the left knee is confirmed by the quadriceps atrophy, the tenderness to palpation, and positive McMurray test. In other words, plaintiff's seriously disabled physical status is essentially unchanged since the accident.

In this circumstance it seems inappropriate to rely on the concept of a "gap in treatment" to nonsuit this clearly injured and disabled individual. It appears from the records that the clinic itself terminated plaintiff's treatment after five months, neither scheduling nor directing any further follow-up consultations or examinations, despite the objectively confirmed injuries to her discs and medical meniscus, the existence of which the clinic clearly recognized, and the substantial radiating pain plaintiff claimed. By issuing what it termed a "final report," the clinic implicitly abandoned the prospect of treating plaintiff further, relegating her to the prescribed at-home therapeutic exercises and over-the-counter analgesics. The clinic's abandonment of the attempt to treat plaintiff does not call into question

that plaintiff is suffering from several serious objective injuries which are causing her disabling pain and severe limitations.

As the Court of Appeals observed in *Pommells v Perez* (4 NY3d 566, 574 [2005]), "the law surely does not require a record of needless treatment in order to survive summary judgment." The cessation of plaintiff's treatment here has the appearance of a determination that further treatment would not provide a resolution of the injuries or the pain.

Of course, the Court in *Pommells* also held that a plaintiff has an affirmative obligation to provide an explanation for a cessation of treatment (*id.*). I submit that the term "final" in the clinic's report provides sufficient implicit explanation, and reflects the clinic's conclusion that nothing more could be medically accomplished.

However, even if we accept for argument's sake that plaintiff's "serious injury" claim under Insurance Law § 5102 (d) must be dismissed due to her failure to include a specific explanation of why her treatment ceased on March 29, 2000, the record still supports finding a triable factual issue as to whether plaintiff suffered from a serious injury under the statute's provision regarding "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (Insurance Law § 5102 [d]).

The existence of several injuries is established. The observation of significantly limited range of motion, particularly in the lumbar area, and of related myospasms in the lumbar paraspinal muscles, provides sufficient objective support for the existence of an ongoing significant limitation. It appears to be undisputed that plaintiff did not return to work at her beauty salon for five months, and that even once she returned, she could perform only a small fraction of the tasks she formerly could do, for only a small fraction of the day. She also cannot perform the normal tasks of her home life. It seems unassailable that plaintiff's objectively confirmed injuries prevented her from "performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury" (Insurance Law § 5102 [d]).

Notably, the experts assigned by defendants to evaluate plaintiff's condition offered nothing contradicting the existence

of these injuries immediately after the accident preventing her from performing her usual and customary activities.

Radiologist Audrey Eisenstadt, M.D., asserted that she had reviewed Perez's various MRI films and found cervical straightening, and acknowledged the presence of a small central disc herniation at the L4-5 level in plaintiff's lumbar spine. Any suggestion that the small central disc herniation may be preexisting simply creates a question of fact as to whether the undisputed L4-5 herniation was caused by the accident.

Reliance on Dr. Krishna's report does not avail defendant either, since other than with respect to the straight-leg raising tests and the deep tendon reflexes, he did not state what objective tests he used, or the degree of motion he found in relation to what is considered normal; rather, he merely provided conclusory results (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350, 358 [2002]; *Webb v Johnson*, 13 AD3d 54 [2004]).

Dr. Dick's examination of Perez actually revealed positive results to straight-leg and McMurray's tests. Dr. Dick's failure to reconcile these results with his conclusion that Perez's injuries were resolved undermines his assertion that she suffered no disability.

Review of the record reveals that plaintiffs submitted objective evidence sufficient to raise a triable issue of fact as to serious injury (*see Akamnonu v Rodriguez*, 12 AD3d 187 [2004]; *Brown v Achy*, 9 AD3d 30 [2004]). Accordingly, the denial of summary judgment should be affirmed.