*212 OPINION OF THE COURT
John M. Curran, J.
Plaintiff commenced this action to recover damages for injuries allegedly sustained in a motor vehicle accident. Defendant moves for summary judgment dismissing the complaint on the ground that plaintiff did not suffer a “serious injury” within the meaning of Insurance Law § 5102 (d). Plaintiff has cross-moved for an order granting partial summary judgment on the issue of liability and for the dismissal of certain affirmative defenses.
This case presents certain issues which should be addressed in the wake of the Court of Appeals decision in Pommells v Perez (4 NY3d 566 [2005]). Specifically, these issues are: (1) is latent degenerative disc disease a “pre-existing condition” under Pommells, and (2), if so, is it sufficient under Pommells for the defendant on a summary judgment threshold motion to rely solely on that type of preexisting condition to shift the burden to the plaintiff to come forward with evidence addressing defendant’s claimed lack of causation? For the reasons set forth below, this court answers the first question in the affirmative, but the second question in the negative.
It is well established that the trial courts are the gatekeepers in evaluating on summary judgment motions whether the admissible evidence warrants a jury trial on the issue of serious injury (Licari v Elliott, 57 NY2d 230, 237-238 [1982]). The courts thereby fulfill the legislative intention of weeding out cases which involve only minor or trivial injuries from the trial process (Montgomery v Daniels, 38 NY2d 41, 51 [1975]; Lopez v Senatore, 65 NY2d 1017, 1020 [1985]).
It is likewise well established that there is a burden shifting analysis for summary judgment motions and that this analysis applies to threshold motions (Gaddy v Eyler, 79 NY2d 955 [1992]). A defendant seeking to dismiss an action on the threshold question must make a prima facie showing that plaintiffs alleged injuries fail to establish a serious injury (Pommells, 4 NY3d at 574; Brannan v Brownsell, 23 AD3d 1106 [4th Dept 2005]; Bowen v Dunn, 306 AD2d 929 [4th Dept 2003]; Thousand v Hedberg, 249 AD2d 941 [4th Dept 1998]; Green v Gloede, 222 AD2d 1066 [4th Dept 1995]). The defendant must affirmatively demonstrate the merits of its defense and does not meet this burden by noting gaps in the plaintiff’s proof (Edwards v Arlington Mall Assoc., 6 AD3d 1136, 1137 [4th Dept 2004]).
*213 Until the movant establishes its entitlement to judgment as a matter of law, the burden does not shift to the opposing party to raise an issue of fact and the motion must be denied (Loveless v American Ref-fuel Co. of Niagara, 299 AD2d 819, 820 [4th Dept 2002]). However, once the moving party establishes its entitlement to judgment through the tender of admissible evidence, the burden shifts to the nonmoving party to raise a triable issue of fact (Gern v Basta, 26 AD3d 807, 808 [4th Dept 2006], lv denied 6 NY3d 715 [2006]).
Courts must be cognizant of the rule that summary judgment is a drastic remedy and that there is a “considerable reluctance to grant it in negligence actions” (Pomietlasz v Smith, 31 AD3d 1173, 1174 [4th Dept 2006]). Courts also are required upon a defendant’s motion for summary judgment to view the evidence in the light most favorable to the plaintiff (Evans v Mendola, 32 AD3d 1231 [4th Dept 2006]; Esposito v Wright, 28 AD3d 1142, 1143 [4th Dept 2006]; Haist v Town of Newstead, 27 AD3d 1133, 1135 [4th Dept 2006]).
The record before the court establishes that the motor vehicle accident occurred on April 8, 2004. Plaintiffs vehicle was rear-ended by the defendant who was then traveling approximately 40 to 45 miles per hour. Plaintiff was driven into the vehicle in front of him despite having his foot on the brake. Plaintiff did not hear any noises prior to what he described as a “huge impact.”
After the accident, plaintiff initially went home and then later that same day to the emergency room. He complained of numbness in his jaw and pain in his shoulder. The pain radiated down his neck and from his back to his front. Plaintiff also had a headache.
Within a week after the accident, plaintiff sought treatment with Dr. Jerry Tracy with Gosey & Associates Pain Treatment Center. Plaintiff complained of numbness in his jaw, pain radiating from his neck, and pain from the right side of his chest and his shoulder. Plaintiff received a prescription for pain management drugs.
Later that same year, plaintiff sought treatment from Dr. Edward D. Simmons, an orthopaedic surgeon. Plaintiff complained of neck and shoulder pain and numbness in his jaw. Plaintiff was then sent for chiropractic therapy and treated with Dr. Anthony Bianchi. Plaintiff also received physical therapy. Approximately 18 months after the accident, plaintiff saw Dr. Jeffrey Lewis, another orthopaedic surgeon, who *214 ultimately recommended surgery. Other than the day of the accident, plaintiff did not miss any work as a result of the accident.
Plaintiff was 53 years old at the time of the accident. He never had any prior complaints of pain pertaining to the back or neck. There is no evidence in the record that plaintiff had any prior injuries to his back or neck or that he needed any prior treatment for back or neck conditions. There are no preaccident medical records in the information presented to the court.
Defendant relies on the affirmed independent medical examination (IME) report of Dr. S. David Miller and the sworn transcript from plaintiffs examination before trial. Dr. Miller’s report indicates that he personally reviewed the MRI images of plaintiffs cervical spine dated May 4, 2004 and August 30, 2005. Dr. Miller reports that both sets of images reveal that: “there is evidence of degenerative disc disease/spondylosis involving the C5/6 and C6/7 levels” and that there is “mild disc bulging at these levels.” Dr. Miller further finds that these images do not bear any evidence of “focal disc herniation.” Dr. Miller concludes that the mild disc bulging is associated to the degenerative disc disease/spondylosis and that “the abnormalities identified on MRI of the cervical spine are degenerative in nature and unrelated to the motor vehicle accident of 4/8/04.”
Defendant’s papers do not include the radiologists’ reports of the MRIs but rely solely on Dr. Miller’s own interpretation of the films. The radiologists’ reports are attached in admissible form to the plaintiffs answering/cross motion papers. The radiologist who interpreted the films on May 4, 2004 (26 days after the accident) found disc bulges at three levels of the cervical spine and does not use the word “degenerative” in his report. Additionally, while the radiologist report dated August 30, 2005 refers to “degenerative disc disease” at C5/6, it makes no reference to degeneration in relation to the C6/7 disc herniation.
Plaintiffs papers also include in admissible form the reports of Dr. Simmons dated June 24, 2004, Dr. Lewis dated August 23, 2005, and Dr. Lewis dated June 21, 2006.
Defendant asserts that plaintiffs degenerative cervical disc disease is a “pre-existing condition” under Pommells, thereby shifting the burden to the plaintiff on this basis alone to address this evidence of degeneration and explain how the subject accident caused plaintiffs injuries. Given that plaintiff did not have any symptoms or other evidence of a cervical injury before the accident, plaintiffs cervical spine appears to have had what *215 the courts refer to as a latent condition as opposed to an asymptomatic condition which was patent or known prior to the accident. The Pattern Jury Instructions and the courts also seem to recognize some distinction between a known asymptomatic condition subject to aggravation (PJI 2:282 [2006]; Miller v Sansone, 127 AD2d 569 [2d Dept 1987]; Schaming v Saunders Constr. Carriers, 172 AD2d 957 [3d Dept 1991]), and a latent or quiescent condition which is triggered by an accident (PJI 2:283 [2006]; Schou v Whiteley, 9 AD3d 706 [3d Dept 2004]; Martin v Volvo Cars of N. Am., 241 AD2d 941 [4th Dept 1997]; Pacella v Masone, 262 AD2d 291 [2d Dept 1999]; Bartolone v Jeckovich, 103 AD2d 632 [4th Dept 1984]). However, these same decisions also treat both latent and patent problems as “pre-existing” conditions. Moreover, the decision in Pommells contains no basis upon which to distinguish between the two for causation purposes. Accordingly, this court must conclude that latent degenerative disc disease is a preexisting condition within the meaning of Pommells.
At oral argument, defense counsel argued that Dr. Miller’s opinion that plaintiffs bulging discs are degenerative in nature and therefore not causally related to the accident is a sufficient basis under Pommells upon which to shift the burden to the plaintiff on this motion. As discussed below, that is not how this court reads Pommells and this court also is of the opinion that this is not a proper or practical conclusion.
Pommells is a trilogy of cases, two of which are relevant here: Carrasco v Mendez and Brown v Dunlap. In Carrasco v Mendez, the Court of Appeals affirmed dismissal of the plaintiffs complaint on the threshold issue and held: “with persuasive evidence that plaintiffs alleged pain and injuries were related to a preexisting condition, plaintiff had the burden to come forwr i with evidence addressing defendant’s claimed lack of cat tion.” (4 NY3d at 580 [emphasis added].) The “persuasive e idence” submitted by the defendant in Carrasco included an affirmed report from one of the plaintiff’s treating physicians which acknowledged the existence of a preexisting degenerative condition and that a return to reaccident status had been achieved (4 NY3d at 578).
In Brown, while the Court found that the defendant had met its initial burden on the motion (at least with respect to the alleged “gap in treatment”), it also held as to the alleged preexisting condition that a chiropractor’s “conclusory notation” is “itself insufficient to establish that plaintiffs pain mig11 be *216 chronic and unrelated to the accident” (4 NY3d at 577). The Court of Appeals clearly drew a contrast between the evidence presented in Brown and the evidence presented Carrasco. Thus, it appears that a “conclusory notation” by a defense doctor as to a preexisting condition is insufficient whereas “persuasive evidence” comprised at least in part of an admission by plaintiffs treating physician as to a degenerative condition is sufficient for a defendant to carry its burden on a summary judgment motion.
Here, all that is present is Dr. Miller’s conclusory notation that the plaintiff’s bulging discs are merely degenerative in nature. Dr. Miller does not address the herniation at C6/7 found in the MRI report dated August 30, 2005. Dr. Miller also does not explain how it is that plaintiff experienced no cervical pain before the accident, but consistently experienced it since the accident. Thus, based on this court’s review of Pommells, Dr. Miller’s opinion, in and of itself, is insufficient to shift the burden to the plaintiff.
Furthermore, any conclusion that a finding of a degenerative condition is in itself sufficient for a defendant to carry its burden on a motion for summary judgment is neither a proper nor practical result. The court takes judicial notice of the notorious and indisputable fact, as is commonly proved before the court at trial, that many adults over the age of 30, and most adults over the age of 50, have degenerative changes in their spine and that many such changes are asymptomatic (Hunter v New York, Ontario & W. R.R. Co., 116 NY 615 [1889]; Erie County Bd. of Social Welfare v Holiday, 14 AD2d 832 [4th Dept 1961]). If the establishment of degenerative changes in the spine is sufficient in itself for a defendant to meet its burden on a summary judgment threshold motion, that burden will be met in virtually every case. If merely establishing degenerative changes in the spine is enough, plaintiffs — at least those over the age of 30— will almost always be required to provide the explanation of causation required by Pommells. Until there is further clarification on the issue from an appellate court, this court will not come to such a broad holding. Rather, a finding of degeneration in the spine must be accompanied by something more such as preaccident radiological tests establishing the preaccident degenerative changes or more “persuasive evidence” than provided in this case.
The better view is demonstrated by the decision in Jaramillo v Lobo (32 AD3d 417 [2d Dept 2006], as well as in the dissent *217 ing opinions in Perez v Rodriguez (25 AD3d 506, 513 [1st Dept 2006, Saxe, J., dissenting]) and Ciocca v Park (21 AD3d 671, 674 [3d Dept 2005, Lahtinen, J., dissenting]). These decisions essentially stand for the proposition that competing testimony between an asymptomatic preexisting degenerative disc condition and a symptomatic postaccident aggravation of such a condition in itself creates a triable issue of fact. Once a defense physician concludes that there is a degenerative disc problem and there is an asymptomatic history of back or neck problem with no preaccident objective evidence of a degenerative condition, there is a sufficient basis on which to determine that there is a triable question of fact. When this alone is the basis for the defendant’s motion, the defendant has failed to meet its burden (Gentile v Snook, 20 AD3d 389 [2d Dept 2005]). Again, without more, the instant motion must fail.
This is parallel to the rule that, in response to a defense motion for summary judgment, it is insufficient for a plaintiff to merely establish the existence of a disc herniation (Pommells, 4 NY3d at 574).
This court acknowledges the existence of a series of cases from other departments which seem in very broad terms to indicate that evidence of degenerative changes in the spine is sufficient for a defendant on a threshold summary judgment motion to carry its burden on the motion (Cardillo v Xenakis, 31 AD3d 683 [2d Dept 2006]; Zarate v McDonald, 31 AD3d 632 [2d Dept 2006]; Gomez v Epstein, 29 AD3d 950 [2d Dept 2006]; Legendre v Bao, 29 AD3d 645 [2d Dept 2006]; Faulkner v Steinman, 28 AD3d 604 [2d Dept 2006]; Kaplan v Vanderhans, 26 AD3d 468 [2d Dept 2006]; Jimenez v Rojas, 26 AD3d 256 [1st Dept 2006]; Mullings v Huntwork, 26 AD3d 214 [1st Dept 2006]; Agard v Bryant, 24 AD3d 182 [1st Dept 2005]; Giraldo v Mandanici, 24 AD3d 419 [2d Dept 2005]; Montgomery v Pena, 19 AD3d 288 [1st Dept 2005]). However, none of the decisions specifically address the underlying facts of the cases and none of them deal with the wide-ranging practical effect that such a holding would cause in this field of the law.
Two recent Fourth Department decisions also do not appear to require a different answer here. In Clark v Perry (21 AD3d 1373 [4th Dept 2005]), while there was evidence of a degenerative condition, the record on appeal reflects that the preexisting condition was known and treated before the accident involved there occurred. In Caldwell v Grant (31 AD3d 1154, 1155 [4th Dept 2006]), the Court had plaintiffs medical records available *218 to it which showed a “preexisting degenerative injury” to plaintiffs cervical spine (emphasis added).
Defendant’s papers also are insufficient for two other reasons. First, Dr. Miller relies substantially on unsworn medical reports from Dr. Tracy which are not in the record here. This requires denial of the motion (Jackson v Colvert, 24 AD3d 420 [2d Dept 2005]; Bycinthe v Kombos, 29 AD3d 845 [2d Dept 2006]). Second, Dr. Miller performed range of motion tests which proved abnormal but noted that plaintiff, while under general observation, moved more normally. On this basis, Dr. Miller appears to have concluded that plaintiff was faking his limitations during the examination. This is a credibility determination by Dr. Miller which cannot be resolved on this motion (Clause v du Pont De Nemours & Co., 284 AD2d 966 [4th Dept 2001]; Rivera v Majuk, 263 AD2d 841 [3d Dept 1999]; Kaplan v Gak, 259 AD2d 736 [2d Dept 1999]).
For all of the foregoing reasons, the defendant’s motion for summary judgment is denied. The court must then turn its attention to the plaintiffs cross motion. At oral argument, defense counsel agreed that, if the court did not grant the defendant’s motion, the defendant did not oppose the entering of an order granting plaintiff’s motion finding that the defendant was negligent, but otherwise denying the motion as to liability. Similarly, the defendant has acceded to the motion to strike the first, second and third affirmative defenses. Plaintiffs cross motion is therefore granted to the extent of determining that defendant was negligent as a matter of law and dismissing the first, second and third affirmative defenses. The issues of serious injury and whether defendant’s negligence was the proximate cause of any such injuries remain open for trial.