■ CAROLYN CHARLEY, Appellant, v MARGARET E. GOSS et al., Respondents, et al., Defendant. [863 NYS2d 205]—

Order, Supreme Court, New York County (Deborah A. Kaplan, J.), entered May 9, 2007, which granted defendants Goss and Conroy's motion for summary judgment dismissing the complaint as against them, affirmed, without costs.

This is a personal injury action which arises out of a motor vehicle accident that occurred on February 14, 2004 at the intersection of West 31st Street and Dyer Avenue in Manhattan. Plaintiff asserts that she was the front-seat passenger in a vehicle owned and operated by defendant Nelson when it came into contact with a vehicle owned by defendant Conroy and operated by defendant Goss.* Plaintiff declined medical treatment at the scene and first sought medical attention, according to her deposition testimony, "a few days after" the incident.

Plaintiff subsequently commenced this action in February 2005, alleging that she had sustained a serious injury as defined in Insurance Law § 5102 (d). Defendants Goss and Conroy, after issue was joined and discovery conducted, moved for summary judgment dismissing the complaint as against them on the ground that plaintiff failed to meet the serious injury threshold. The motion court, in a decision and order entered on May 9, 2007, granted the motion and dismissed the complaint against the moving defendants, holding, inter alia, that "the plaintiff

---

* The New York City Police Department accident report indicates that both drivers claimed the other ran a red light.

has failed to demonstrate an inability to perform substantially all of the material acts that constituted her usual and customary duties for 90 of the 180 days following the accident [and] offers contradictory reasons for her cessation of or gap in treatment." Plaintiff testified that she stopped treatment because she could no longer afford it, as emphasized by the dissent, but subsequently seems to have reported to Dr. Post, who submitted a medical report in opposition to defendants' motion, that there had been some improvement in her condition at the time treatment was discontinued, although some discomfort persisted. Plaintiff appeals, and we now affirm.

The Court of Appeals has often stated that the " 'legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries' " (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002], quoting *Dufel v Green*, 84 NY2d 795, 798 [1995]). In that vein, the Court of Appeals has rejected the contention that the question of whether a plaintiff has sustained a serious injury is always a question of fact for the jury and, instead, has held that the issue of whether a claimed injury falls within the statutory definition of a "serious injury" is a question of law for the courts in the first instance, which may properly be decided on a motion for summary judgment (*Licari v Elliott*, 57 NY2d 230, 237 [1982]; *Rubensccastro v Alfaro*, 29 AD3d 436, 437 [2006]).

Once the proponent of a motion for summary judgment has set forth a prima facie case that the injury is not serious, the burden then shifts to plaintiff to demonstrate, by the submission of objective proof of the nature and degree of the injury, that he/she did sustain such an injury, or that there are questions of fact as to whether the purported injury was "serious" (*Toure*, 98 NY2d at 350; *Cortez v Manhattan Bible Church*, 14 AD3d 466 [2005]). Moreover, "even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury— *such as a gap in treatment*, an intervening medical problem *or a preexisting condition*—summary dismissal of the complaint may be appropriate" (*Pommells v Perez*, 4 NY3d 566, 572 [2005] [emphasis added]; *see Perez v Rodriguez*, 25 AD3d 506, 508 [2006]).

Initially, we find that defendants shouldered their burden of establishing, prima facie, that plaintiff did not sustain a serious injury within the statutory definition. Defendants submitted the affirmed report of Dr. Charles Totero, a board certified orthopedic surgeon, who conducted an independent medical examination of plaintiff, during which he viewed various ranges of

motion and performed a number of objective tests. Dr. Totero also viewed plaintiff's prior medical records, including MRI films, and concluded, among other things, that "[m]otor and sensory are grossly intact . . . [t]here is negative Hawkins, negative drop arm, and negative impingement sign. Negative Neer sign. Motor and sensory to the upper extremities are intact." Dr. Totero further opined that:

"MRIs, of the cervical and lumbar spines documented minimal *degenerative changes* with bulging discs only. No herniations or nerve root impingement was documented. Electrodiagnostic studies of the upper and lower extremities showed no evidence of lumbar or cervical radiculopathy. An MRI of the right shoulder documented pre-existing hypertrophic changes of the AC joint with a tendonitis present.

"The above orthopedic physical examination documents no objective orthopedic findings at this time. The claimant is currently working in her prior capacity. She is undergoing no active treatment at this time.

"It is my opinion, based on the objective evidence in this case, that no disability exists at this time as it pertains to the incident of 2/14/04 and the above diagnoses. She requires no further diagnostic testing and/or treatment, and may carry on normal work and daily activities, without restrictions." (Emphasis added.)

Defendants also rely on plaintiff's deposition testimony, in which she claims to have missed only two weeks of work (in contrast to her verified bill of particulars, which states she returned to work after only six days), and that she stopped all medical treatment after approximately four months.

Plaintiff, in response to defendants' motion, submitted the affirmed medical report of Dr. Paul Post, who had one "orthopedic consultation" with plaintiff on December 11, 2006, almost three years after the accident. Initially, we find a review of Dr. Post's report to be revealing in that Dr. Post, unlike Dr. Totero, reviewed only the narrative reports of plaintiff's MRI studies, and not the films themselves. Moreover, whereas Dr. Totero was provided with numerous medical records—including ultrasound and EKG reports, doctors' files and summaries and medical records from Valerie Conner Acupuncture—which he incorporated into his conclusions, Dr. Post was apparently not given the benefit of that background information.

More importantly, Dr. Post's report addresses plaintiff's subjective complaints of recurring discomfort, tenderness and pain, but fails to list any objective orthopedic tests performed, and neglects to adequately, or in some cases, even peripherally

explain plaintiff's cessation of treatment, or the preexisting degenerative changes to plaintiff's cervical and lumbar spine and right shoulder delineated in Dr. Totero's report. Dr. Post also fails to list any activity plaintiff was specifically prevented from performing which, in view of the fact that she returned to work approximately one week after the accident, demonstrates that she also had failed to satisfy the 90/180 limitation set forth in Insurance Law § 5102 (d). Concur—Friedman, Nardelli and Buckley, JJ.

Tom, J.P., and Renwick, J., dissent in a memorandum by Renwick, J., as follows: I disagree with the majority's conclusion that dismissal was warranted because plaintiff allegedly failed to meet her burden of raising triable issues of fact on the threshold issue of serious injury. Plaintiff alleged in her bill of particulars that she suffered a "permanent consequential limitation of a body organ or member" and "significant limitation of use of a body function." (Insurance Law § 5102 [d].) In this case the burden never shifted to plaintiff. A proper analysis of defendants' proof reveals that defendants failed to meet the initial burden for entitlement to summary judgment. Accordingly, I respectfully dissent.

On a motion for summary judgment dismissing the complaint, the defendant bears the initial burden to demonstrate that the plaintiff did not sustain serious injury (see Pommells v Perez, 4 NY3d 566 [2005]; Toure v Avis Rent A Car Sys., 98 NY2d 345 [2002]; Gaddy v Eyler, 79 NY2d 955, 956 [1992]). If the defendant meets this burden by showing that the plaintiff did not suffer "permanent loss," a "consequential" or "significant" limitation under Insurance Law § 5102 (d), the plaintiff can provide a medical expert's designation of a numeric percentage of a loss of range of motion or an expert's qualitative assessment of the plaintiff's condition to raise a triable issue of fact as to whether the plaintiff sustained a serious injury (see Perez v Rodriguez, 25 AD3d 506, 507-508 [2006]). When either party fails to do so, the court is deprived of an indispensable tool for determining whether a party met its respective burden on the legal question of whether a claim of serious injury is "significant" or "consequential" (Toure, 98 NY2d at 353).

"[W]hether a limitation of use or function is 'significant' or 'consequential' (i.e., important . . . ) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." (Toure, 98 NY2d at 353, quoting Dufel v Green, 84 NY2d 795, 798 [1995].) As the Court of Appeals explained: "In order to prove the extent or degree of

physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury. An expert's *qualitative* assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system. When supported by objective evidence, an expert's qualitative assessment of the seriousness of a plaintiff's injuries can be tested during cross-examination, challenged by another expert and weighed by the trier of fact. By contrast, an expert's opinion unsupported by an objective basis may be wholly speculative, thereby frustrating the legislative intent of the No-Fault Law to eliminate statutorily-insignificant injuries or frivolous claims" (*Toure*, 98 NY2d at 350-351 [citations omitted]).

A defendant fails to meet his or her initial burden when he or she relies upon an examining physician's report which identifies limitations or restrictions (or lack thereof) in a part of the body where the plaintiff claims to have sustained a consequential or significant injury, but which does not sufficiently quantify or qualify the resulting limitations so as to establish that they are permanent or significant. For instance, courts have found a defendant's medical expert's report setting forth numerical ranges of motion of a plaintiff's cervical and/or lumbar spine deficient where it fails to compare those findings to the normal range of motion (*see e.g. Spektor v Dichy*, 34 AD3d 557 [2006]). Failure to provide a comparison to the normal range of motion requires speculation concerning the significance of the numerical results (*cf. Vasquez v Reluzco*, 28 AD3d 365 [2006]). A medical expert's report describing a decrease of ranges of motion of a plaintiff's cervical and/or lumbar spine as "mild" or "insignificant" are similarly deficient where no quantitative percentage or qualitative assessment of the degree of restriction of the range of motion is provided (*see e.g. Yashayev v Rodriguez*, 28 AD3d 651 [2006]; *Kelly v Rehfeld*, 26 AD3d 469 [2006]). Absent such comparative qualification, courts cannot assess whether the described decrease of movements of the cervical and lumbar spine are insignificant in comparison to the normal range of motion expected in a healthy person of the same age, weight and height (*id.*; *cf. Milazzo v Gesner*, 33 AD3d 317 [2006]).

In support of their motion for summary judgment, defendants submitted various records of plaintiff and an affirmed report from Dr. Charles M. Totero, M.D., a board certified orthopedic surgeon. Dr. Totero conducted a physical examination of plaintiff and reviewed her medical records, including reports from her treating physicians and MRI reports of her shoulder and back.

Dr. Totero's report falls short of meeting the principles set forth in *Toure*. He noted the existence of "limited flexion of [plaintiff's] lumbar spine," and "mild to moderate decreased range of motion" in plaintiff's cervical spine. However, the doctor failed to set forth numerical values for his observations with respect to plaintiff's lumbar and cervical spine or provide the normal range of motion so as to permit meaningful comparison. Nor did Dr. Totero provide a qualitative assessment of plaintiff's condition. Absent such comparative quantification or qualitative assessment, this Court can only speculate as to the significance of the findings. As such, we cannot conclude as a matter of law that such limitations of the lumbar and cervical spine were "minor, mild or slight" within the meaning of the No-Fault Law (*Yashayev*, 28 AD3d at 652, quoting *Licari v Elliott*, 59 NY2d 230, 236 [1982]).

Furthermore, contrary to the majority's contention, Dr. Totero failed to specify what objective tests were used to reach his conclusions, or the result of such tests, a fatal flaw to defendants' summary judgment motion (*see e.g. Offman v Singh*, 27 AD3d 284, 285 [2006] [examining neurologist's reports failed to indicate what, if any, objective tests were employed to examine plaintiff]; *see also Dzaferovic v Polonia*, 36 AD3d 652, 653 [2007] [limitation in the range of motion "was not sufficiently quantified or qualified to establish the absence of a significant limitation of motion"]; *cf. Taylor v Terrigno*, 27 AD3d 316 [2006] [while it set forth measurements for loss of range of motions, affirmation of plaintiff's physician was deficient where it failed to identify the objective tests performed in deriving such results]; *Rivera v Benaroti*, 29 AD3d 340, 342 [2006] [same]).

Finally, plaintiff explained that she discontinued treatment in or about June 2004 due to lapse of insurance coverage and her inability to pay for further treatment (*see Wadford v Gruz*, 35 AD3d 258 [2006]; *Jones v Budhwa*, 23 AD3d 154 [2005]; *Francovig v Senekis Cab Corp.*, 41 AD3d 643 [2007]; *Williams v New York City Tr. Auth.*, 12 AD3d 365 [2004]; *Black v Robinson*, 305 AD2d 438, 439-440 [2003]; *cf. Pommells*, 4 NY3d at 577 [2005]; *Brown v Achy*, 9 AD3d 30, 33-34 [2004]). It is clear from the majority's writing that plaintiff's explanation is consistent with subsequent statements to Dr. Post.

Since defendants failed to meet their initial burden of establishing a prima facie case that plaintiff's injuries did not meet the threshold "serious injury," it is unnecessary to consider whether plaintiff's opposition papers were sufficient to raise a triable issue of fact (*see Martinez v Pioneer Transp. Corp.*, 48 AD3d 306, 307 [2008]).

Accordingly, defendants' motion for summary judgment should have been denied and the complaint reinstated. [*See* 2007 NY Slip Op 31530(U).]