**Lillian CARTER, Russell Carter, Chad Carter, Terrance Wilson, and Virgil Williams, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Case No. 04–CV–4880 (FB) (JMA).**

United States District Court, E.D. New York.

Jan. 13, 2011.

Brett Klein, Esq., Leventhal & Klein, LLP, Brooklyn, NY, for Plaintiffs.

Loretta E. Lynch, Esq., United States Attorney, Eastern District of New York,

by: Scott R. Landau, Esq., Brooklyn, NY, for Defendant.

### MEMORANDUM AND ORDER

BLOCK, Senior District Judge:

The United States of America ("United States") has timely moved, pursuant to Federal Rule of Civil Procedure 59(e), to alter or amend the Court's July 27th judgment awarding Lillian Carter ("Lillian") $300,000. Familiarly with the July 20th Memorandum and Order ("M & O") directing the entry of judgment is presumed. *See Carter v. United States*, 725 F.Supp.2d 346 (E.D.N.Y.2010).

The United States argues that the judgment was based on several errors.[1] The Court adheres to its prior decision and addresses each claimed error in turn.

1. The United States argues that it was error to find a "private analog" in § 311 of the Restatement (Second) of Torts because New York has not explicitly adopted that section into its jurisprudence. The Court recognized as much in the M & O. *See Carter*, 725 F.Supp.2d at 355. Nor, however, have the New York courts explicitly rejected the Restatement view on this issue.

In such circumstances, the Court was called upon to determine, as best it could, whether the New York Court of Appeals would recognize § 311 liability if squarely presented with the question. *See Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 71 n. 6 (2d Cir.2003) (noting that district courts, unlike circuit courts, cannot certify issues to state courts). Relying on *Heard v. City of New York*, 82 N.Y.2d 66, 603 N.Y.S.2d 414, 623 N.E.2d 541 (1993), the Court concluded that it would. *Heard* demonstrates that the Court of Appeals adheres to the mod-

ern view that "words as well as acts may serve as the premise for a negligence action," and that "misrepresentation now may be asserted as grounds for recovery in personal injury litigation." *Id.* at 74, 603 N.Y.S.2d 414, 623 N.E.2d 541. Those statements, coupled with *Heard*'s citation to § 311, satisfied the Court that the State Court of Appeals would hold Corley liable for negligently misrepresenting Lillian's address to law enforcement; nothing in the United States's motion convinces the Court otherwise.

2. Citing other jurisdictions' interpretations of § 311, the United States next argues that the Court erred in awarding damages for purely emotional injuries. As the New York Court of Appeals recently reiterated, however, New York law has long recognized that "a person 'to whom a duty of care is owed ... may recover for harm sustained solely as a result of an initial, negligently-caused psychological trauma, but with ensuing psychic harm with residual physical manifestations.'" *Ornstein v. New York City Health & Hosps. Corp.*, 10 N.Y.3d 1, 6, 852 N.Y.S.2d 1, 881 N.E.2d 1187 (2008) (quoting *Johnson v. New York*, 37 N.Y.2d 378, 381, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975)). Even in the absence of any physical injury—whether immediate or residual—"[a] breach of the duty of care 'resulting directly in emotional harm is compensable though no physical injury occurred' when the mental injury is 'a direct, rather than a consequential, result of the breach' and when the claim possesses some guarantee of genuineness." *Id.* (quoting *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504–506, 462 N.Y.S.2d 421, 448 N.E.2d 1332 (1983); other citations and internal quotation marks omitted).

---

**1.** The United States's motion to file a reply brief in excess of 10 pages is granted. For future reference, however, it is cautioned to seek *prior* approval.

■ New York courts have read *Kennedy* and its progeny to require that a negligence action for purely emotional injuries "be premised upon conduct that unreasonably endangers the plaintiff's physical safety." *Losquadro v. Winthrop Univ. Hosp.,* 216 A.D.2d 533, 628 N.Y.S.2d 770, 771 (2d Dep't 1995). A threat to her physical safety—either from the ATF agents or Kinte Carter—was precisely the basis of Lillian's claim for emotional distress. In other words, by negligently misrepresenting Kinte Carter's whereabouts to law enforcement agents, Corley unreasonably placed Lillian's physical safety in danger; that the danger did not materialize does not preclude Lillian from recovering emotional damages flowing from her fear that it would. The necessary "guarantee of genuineness" is supplied here by the formal diagnosis of PTSD made by both parties' medical experts.

3. The United States next takes issue with the Court's factual finding that Corley could not reasonably have foreseen the consequences of negligently providing addresses to law enforcement because Corley testified that she knew only in a general sense that the information she provided would be used for law-enforcement purposes. The Court inferred from that testimony, however, that a reasonable person would understand that a key law-enforcement purpose for address information would be the carrying out of searches and arrests. A reasonable person would further understand that *incorrect* address information could lead to a search of an innocent person's home. Thus, the Court found no merit in the United States' argument that Corley could not have foreseen the consequences of her negligence.

4. In a similar vein, the United States argues that the Court's factual finding of proximate cause is not supported by the evidence. The M & O fully explains the

Court's reasoning: Corley's negligence caused Ellwanger to focus on 525 Carey Avenue instead of 526, and Ellwanger's subsequent efforts at confirmation were themselves triggered by that negligence. Nothing in the United State's motion for reconsideration causes the Court to question its finding.

5. The United States next argues that the Court's damage award must be reduced because Lillian is "much more excitable and susceptible to emotional injury than the average person." United States's Mem. of Law at 17. The United States is correct that the "eggshell skull doctrine"-under which a tortfeasor "takes the plaintiff as he finds him"-applies only to physical injuries. *See Ragin v. Harry Macklowe Real Estate Co.,* 6 F.3d 898, 908 (2d Cir.1993). *Ragin,* it should be noted, addressed damages in a federal civil-rights case; it is unclear that New York follows the same rule. *See Bartolone v. Jeckovich,* 103 A.D.2d 632, 481 N.Y.S.2d 545, 547 (4th Dep't 1984) (applying eggshell rule to schizophrenia aggravated by minor physical injury); *Bialik v. E.I. Dupont de Nemours & Co.,* 142 Misc.2d 926, 539 N.Y.S.2d 605, 608 (Sup.Ct. Niagara County 1988) (invoking rule and holding that determination of whether conduct was extreme and outrageous required subjective assessment in light of plaintiff's mental condition.).

■ In any event, the effect of *Ragin* is that a "plaintiff cannot recover for emotional distress that a reasonable person would not have suffered, but can recover for the physiological symptoms that she experienced because of her heightened emotional sensitivity." *Schipper v. United States,* 1998 WL 786451, at *11 (E.D.N.Y. Sept. 15, 1998). Since it is not clear from the face of the M & O, the Court clarifies that its award reflects its assessment of the mental distress a reasonable person would suffer.

284

6. The United States next argues that the comparator cases the Court cited to support its award were inapposite because they all involved allegations. of intentional police misconduct, while Corley's conduct was only negligent. Differing degrees of fault would be relevant had the Court awarded *punitive* damages, which are based, in part, on the reprehensibility of the defendant's conduct. *See, e.g., Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir.2005) ("Punitive damages are invoked to punish egregious, reprehensible behavior."). But the Court's award was solely for *compensatory* damages, which serve the "entirely different purpose" of "compensat[ing] the injured victim for injuries actually endured." *Id.* Since Lillian's injuries would have been the same even if Corley had deliberately directed law enforcement to the wrong address, the cases cited by the Court provided apt comparisons.

7. The United States next argues that the Court's award is not commensurate with the severity of Lillian's injuries because her PTSD did not require hospitalization or render her permanently incapable of working. The Court was well aware of those facts and took them into consideration. The Court also found, however, that the PTSD "had a particularly profound and long-lasting effect on Lillian's mental health and is chronic." *Carter*, 725 F.Supp.2d at 361. The Court's award would undoubtedly have been much higher had Lillian's PTSD been completely debilitating.

8. Finally, the United States argues that the Court should lower its award because "the record shows that Plaintiff's emotional distress has been substantially impacted by a multitude of factors completely unrelated to the incident in question[.]" United States's Mem. of Law at 22. The Court explicitly noted that "in

assigning a value to the emotional distress suffered by Lillian as a result of Corley's negligence, [it] made every effort to take the other stressors in Lillian's life into account." *Carter*, 725 F.Supp.2d at 361 n. 8.

## CONCLUSION

For the foregoing reasons, the United States's motion to alter or amend the July 27th judgment is denied.

**SO ORDERED.**