OPINION OF THE COURT
 

 Simons, J.
 

 Plaintiff David Heard was seriously injured when he dove off a jetty into shallow water at Rockaway Beach in Queens. Moments earlier, a lifeguard had ordered Heard and his companions to leave the wooden structure. Heard resisted the order, telling the lifeguard he wanted to make one more dive. The lifeguard repeated the order but finally acquiesced in the face of Heard’s insistence. Heard and his mother, also a plaintiff here, contend on this appeal that the lifeguard’s acquiescence constituted negligence and was a cause of his injuries. For the reasons stated below, we disagree and therefore affirm the order of the Appellate Division dismissing the complaint.
 

 I
 

 The testimony at trial established that Heard, age 17, came to the beach with a group of friends. There is a series of wooden jetties along the beach, each approximately 40 feet long and extending into the ocean perpendicular to the waterline. The structures were installed at midcentury to control erosion. Over time, they have become covered with sand, and now only the bulkhead at the ocean end remains visible. It
 
 *70
 
 was from one of these bulkheads that Heard and his companions began jumping and diving shortly after their arrival.
 

 According to trial testimony, the boys, for a period of 10 to 15 minutes, repeatedly climbed up on the jetty and jumped off without incident. Several hours later, as high tide approached, the group returned to the jetty. There, for another 15 or 20 minutes, the boys jumped and dove in all directions. Three or four times, Heard dove seaward toward an oncoming wave, using a "racing dive” employed by swimmers when they enter shallow water. Heard testified that when he stood in the water, the waves broke below his shoulders. His companions likewise placed the depth at five to six feet. Lifeguards on duty, however, recalled the water level as being two feet or less.
 

 While the boys were diving, lifeguard Stuart Gottlieb approached them and told them to get off the jetty. The parties disagree on exactly what followed, but it is undisputed that Heard refused to leave and indicated in some fashion that he wanted to make one more dive. Gottlieb, in turn, repeated his order, but Heard continued to resist. Finally, Gottlieb told him he could go ahead. Heard waited for a wave and attempted a shallow-water racing dive. He hit the water about five feet from the jetty and sustained paralyzing injuries. The evidence did not establish what Heard hit as he entered the water.
 

 Responding to interrogatories, the jury determined that lifeguard Gottlieb had given Heard permission to dive, that defendant was negligent and Heard was not, and that defendant’s negligence caused the injury. On appeal the Appellate Division reversed on the law. It found that the causes of Heard’s injuries were the sandbar around the jetty and "his insistence on taking another dive” rather than any negligence on defendant’s part (186 AD2d 108, 109). It concluded that plaintiffs’ complaint should have been dismissed at the close of plaintiffs’ evidence for failure to establish a prima facie case.
 

 The appeal focuses narrowly on the consequences to be attached to the lifeguard’s acquiescence in Heard’s final dive. The core theory of plaintiffs’ case is that the lifeguard’s assent breached a duty of care owed to Heard and was a proximate cause of his injuries. The City has argued principally that Heard assumed the risk inherent in the activity of diving
 
 (see, Curcio v City of New York,
 
 275 NY 20, 23-24;
 
 Valdez v City of New York,
 
 148 AD2d 697, 698-699). It is the City’s contention that where the doctrine of assumption of risk applies, its duty
 
 *71
 
 is limited to exercising the ordinary reasonable care necessary to protect a plaintiff from risks that are "unassumed, concealed or unreasonably increased”
 
 (Benitez v New York City Bd. of Educ.,
 
 73 NY2d 650, 658;
 
 and see, Turcotte v Fell,
 
 68 NY2d 432, 438-439).
 

 II
 

 First, plaintiffs portray the lifeguard’s conduct as a breach of the municipality’s recognized duty of general supervision
 
 (see, Caldwell v Village of Is. Park,
 
 304 NY 268, 273). That theory will not support liability on the facts presented. The scope of the duty to supervise varies according to the circumstances but, in the operation of recreational areas, it does not extend to protecting patrons from "the dangers inherent in the sport so far as they are obvious and necessary” (Cu
 
 rcio v City of New York,
 
 275 NY 20, 23-24). Even when an agent of the municipality expressly authorizes swimming in a location where the municipality has banned it, a swimmer continues to assume the obvious and necessary risks unless a representation as to safety has been given
 
 (Cunningham v City of Niagara Falls,
 
 242 App Div 39, 42,
 
 after retrial
 
 244 App Div 880,
 
 affd
 
 269 NY 644). Plaintiffs here failed to show that the risk actually encountered was unusual to ocean diving or not obvious
 
 (compare, Caldwell v Village of Is. Park, supra,
 
 at 275 [risk of injury from illegal fireworks not inherent to beach activities];
 
 Fritz v City of Buffalo,
 
 277 NY 710 [risk of injury caused by others’ hazardous play at skating rink not inherent to skating]). Moreover, the lifeguard was present and made clear that diving from the jetty was to cease and the municipality was not required to do more. Its duty to provide adequate general supervision did not extend to providing "strict or immediate supervision” to protect users of the beach from obvious risks
 
 (Caldwell v Village of Is. Park, supra,
 
 at 273;
 
 Peterson v City of New York,
 
 267 NY 204, 206). To the extent that plaintiffs’ case was premised on the duty to supervise, the complaint was properly dismissed.
 

 III
 

 That does not end the matter, however. Beyond that general duty of supervision, a duty may arise from negligent words or acts that induce reliance
 
 (see,
 
 Prosser and Keeton, Torts § 56, at 378; § 107, at 745 [5th ed]). If the evidence shows that Heard dove into the water in justifiable reliance on the
 
 *72
 
 lifeguard’s negligent words or acts, a prima facie case was made and properly presented to the jury. It is not enough for plaintiffs to say that defendant could have prevented Heard’s conduct by withholding permission
 
 (see,
 
 Restatement [Second] of Torts § 314). The issue is causality — in short, not what defendant could have prevented but what defendant proximately caused by inducing reliance. It was plaintiffs’ failure to establish reliance that was a central contention in the City’s motion to dismiss at the conclusion of plaintiffs’ evidence, and on that basis the motion should have been granted. Though an issue of causality is usually a factual matter left to the jury, plaintiffs’ evidence here failed to meet the minimum legal test of
 
 Cohen v Hallmark Cards
 
 (45 NY2d 493, 499): whether the evidence provided any "valid line of reasoning and permissible inferences” that could lead rational minds to the conclusion urged by plaintiffs.
 

 A
 

 In the context of this case, two theories of reliance are available to plaintiffs.
 
 *
 
 First, an "assumed duty”, or a "duty to go forward”, may arise once a person undertakes a certain course of conduct upon which another relies
 
 (Nallan v Helmsley-Spear, Inc.,
 
 50 NY2d 507, 522). In determining whether a cause of action lies in such instances, "[t]he query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument of good”
 
 (Moch Co. v Rensselaer Water Co.,
 
 247 NY 160, 167-168;
 
 accord, Nallan v Helmsley-Spear, Inc., supra,
 
 at 522). Put differently, the question is whether defendant’s conduct placed plaintiff in a more vulnerable position than plaintiff would have been in had defendant done nothing
 
 (Nallan v Helmsley-Spear, Inc., supra,
 
 at 522). In
 
 Nallan,
 
 plaintiff alleged that defendant was negligent in performing its assumed duty by not providing a lobby attendant in a building on the night plaintiff was shot there. We suggested there that the assumed duty theory would have been viable if defendant’s prior conduct (i.e., the provision of an attendant on other nights) had foreseeably led plaintiff to change his
 
 *73
 
 own conduct — for instance, by giving him a false sense of security. In such an instance, defendant’s actions could properly be deemed to be a legal cause of plaintiff's harm.
 

 No such causal connection is to be found in the present case. The mere fact that the lifeguard undertook to remove the boys from the jetty neither enhanced the risk Heard faced, created a new risk nor induced him to forego some opportunity to avoid risk
 
 (see,
 
 Restatement [Second] of Torts § 323, comment
 
 c).
 
 Simply stated, the lifeguard’s actions created no justifiable reliance. Heard was in no worse position once the lifeguard acquiesced in his dive than if the lifeguard had stood by and done nothing. Thus, in looking at plaintiffs’ evidence under an assumed duty theory, we conclude as a matter of law that the lifeguard’s failure to insist that Heard leave the jetty was not a breach of duty proximately causing Heard’s injuries.
 

 B
 

 The second theory of reliance available to plaintiffs would hold that the lifeguard’s assent to the dive was a negligent misrepresentation as to the safety of the dive and that Heard foreseeably relied upon it to his own detriment.
 

 At common law, mere statements, even those upon which persons were likely to act, were not grounds for an action in tort, unless fraud or deceit was alleged
 
 (International Prods. Co. v Erie R. R. Co.,
 
 244 NY 331, 336,
 
 cert denied
 
 275 US 527). Only negligent conduct, and not "negligence in word”, was actionable
 
 (id.,
 
 at 335-336). New York abandoned that distinction long ago. Beginning with the
 
 International Prods,
 
 decision, the rule has been settled in this State that words as well as acts may serve as the premise for a negligence action
 
 (see, e.g., White v Guarente,
 
 43 NY2d 356;
 
 Courteen Seed Co. v Hong Kong & Shanghai Banking Corp.,
 
 245 NY 377;
 
 see also, Dawes v Ballard,
 
 133 AD2d 662,
 
 lv denied
 
 76 NY2d 714). Though initially the cause of action arose solely in commercial litigation, misrepresentation now may be asserted as grounds for recovery in personal injury litigation as well
 
 (see, e.g., Webb v Cerasoli,
 
 275 App Div 45,
 
 affd
 
 300 NY 603;
 
 Panica v New York, New Haven & Hartford R. R. Co.,
 
 295 NY 756;
 
 see also,
 
 Restatement [Second] of Torts § 311 [negligent misrepresentation involving risk of physical harm];
 
 compare,
 
 Restatement [Second] of Torts § 552 [negligent misrepresentation in business transactions]).
 

 
 *74
 
 Not every misstatement, however, gives rise to a valid cause of action. For there to be an actionable claim, the defendant must be under a duty to the plaintiff to exercise reasonable care in giving the information, and plaintiff’s reliance upon the information must be foreseeable (Prosser and Keeton, Torts § 33, at 207 [5th ed]). In elaborating on this test, we stated: "There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care”
 
 (International Prods. Co. v Erie R. R. Co.,
 
 244 NY 331, 338,
 
 supra; accord, Eiseman v State of New York,
 
 70 NY2d 175, 187-188).
 

 There can be no doubt that a prima facie case is made out when one familiar with a hazard offers direct assurances of safety to one who is unfamiliar with the hazard and who foreseeably relies upon those assurances. In
 
 Kriz v Schum
 
 (75 NY2d 25), we concluded that a facially sufficient complaint had been made where a diver using defendant’s poorly lighted pool for the first time acted, in part, on defendant’s assurances that diving was safe. Similarly, when one party seeks specific information from a second party, and the second party exclusively controls the information and purports to investigate the matter before responding, liability may be found
 
 (International Prods. Co. v Erie R. R. Co.,
 
 244 NY 331, 339,
 
 supra).
 

 No liability arises, however, when the statements are made in circumstances where reliance is unforeseeable or unjustified. Thus, in
 
 Webb v Cerasoli
 
 (275 App Div 45,
 
 affd
 
 300 NY 603,
 
 supra),
 
 we affirmed a decision holding that plaintiff, a painter, had no cause for action based on negligent misrepresentation when he overheard defendant property owner tell plaintiff’s supervisor that it was safe to stand on a building’s marquee while working and the marquee subsequently collapsed causing him injury
 
 (see also, Courteen Seed Co. v Hong Kong & Shanghai Banking Corp.,
 
 245 NY 377,
 
 supra).
 
 Similarly, the particular nature of the communication may serve to defeat plaintiffs’ claim of reliance. A casual response given informally does not stand on the same legal footing as a deliberate representation for purposes of determining whether
 
 *75
 
 an action in negligence has been established
 
 (Glanzer v Shepard,
 
 233 NY 236, 241).
 

 In sum, our cases make clear that the determination of whether defendant, by negligent misrepresentation, breached a duty to plaintiff and proximately caused the injury turns on the reasonableness of both parties’ conduct. Defendant must have imparted the information under circumstances and in such a way that it would be reasonable to believe plaintiff will rely upon it; plaintiff must rely upon it in the reasonable belief that such reliance is warranted (Restatement [Second] of Torts § 311, comments
 
 b, c).
 

 Here, plaintiffs’ evidence, when viewed in the light most favorable to them, is insufficient to establish the necessary reliance under a misrepresentation theory. Heard and his companions had been jumping and diving from the jetty for several minutes. They had done so earlier in the day as well. Thus, while the lifeguard may have been informed of the general hazards of their conduct as part of his training, Heard had at least some familiarity with the area based on his immediate experience and that of his companions. In fact, Heard exhibited his appreciation for the hazards involved by employing a shallow-water racing dive. In making his request of the lifeguard, he was not a person wholly without knowledge seeking assurances from one with exclusive knowledge. Moreover, the lifeguard made no explicit representation that diving was safe. Nothing about the exchange suggested that the lifeguard was imparting exclusive information about safety upon which Heard should rely. To the contrary, he clearly communicated to the boys that they were to leave the jetty. While his decision to permit Heard one last dive was inconsistent with that message, such inconsistency did not revoke the prior admonition or, according to the testimony, even create an ambiguity in the minds of the divers as to whether they were to leave the jetty. The evidence establishes that the lifeguard initially refused Heard’s request and gave in only after Heard continued to press for permission.
 

 At best, then, the lifeguard’s statement was a reluctant assent that may have implicitly minimized the risk. In looking at the nature and context of the lifeguard’s statement as presented in plaintiffs’ evidence, however, we conclude that no reasonable person in Heard’s position would have relied on such a statement in deciding to dive and that no jury could reasonably have found to the contrary under the test of
 
 Cohen
 
 
 *76
 

 v Hallmark Cards
 
 (45 NY2d 493,
 
 supra).
 
 In the context of his continuing order that the jetty be cleared and his obvious reluctance to accede to Heard’s wishes, the lifeguard was as much warning of danger as vouching for safety. In the face of such ambiguity, a reasonable person would not have relied upon the lifeguard’s reluctant assent to decide to undertake an obvious hazard. That being so, as a matter of law, the lifeguard’s statement was not a breach of duty that proximately caused Heard’s injuries.
 

 IV
 

 The Appellate Division apparently based its decision, at least in part, on its belief that the City was not liable because the injury was caused by a sandbar and it held that under our decisions there was no duty to warn of hazardous conditions resulting from sandbars
 
 (see, Herman v State of New York,
 
 63 NY2d 822). Plaintiffs’ evidence failed to establish what caused the injury and the case did not go to the jury on a theory that the City failed in a duty to warn. We therefore have no occasion to discuss or distinguish the
 
 Herman
 
 decision.
 

 We have considered plaintiffs’ remaining points and find them without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Hancock, Jr., Bellacosa and Smith concur; Judge Levine taking no part.
 

 Order affirmed, with costs.
 

 *
 

 This case, like others involving reliance, may be analyzed as raising either an issue of proximate cause or scope of duty. Under either view, the question is whether the defendant had a duty to protect the plaintiff against the harm that occurred (Prosser and Keeton, Torts § 42, at 274 [5th ed]).