OPINION OF THE COURT
F. Dana Winslow, J.
Plaintiffs’ motion to strike the answers of defendants has been withdrawn. Cross motion of defendant Richard Martin, individually, for summary judgment dismissing the complaint as against him, together with all cross claims, is determined as follows.
This action arises out of an incident which took place on July 5, 1999 at approximately 4:00 a.m., in which the infant plaintiff Michael G. (Michael) was sexually assaulted in his assigned dormitory room by an unidentified individual while Michael was attending the All Star Baseball Camp (the camp), held at Long Island University — C.W. Post Campus (Post). Defendant Richard Martin (Martin) was, at the time, the camp director and the vice-president of Grand Duke Enterprises (Grand Duke), the corporate entity that ran the camp. Plaintiffs assert, essentially, two theories of recovery against Martin: (i) negligent misrepresentation, i.e., that Martin represented, expressly and impliedly, that adequate security measures were in place and that it was unnecessary for Michael to lock his dormitory room door, and (ii) general negligence, i.e., that Martin failed to provide adequate security and protection to the enrolled campers while they were present at Post.
Martin moves for summary judgment dismissing the claims against him on the ground that there is no issue of fact as to the liability of Martin in his individual capacity. Rather, Martin asserts, all claims against him relate to acts performed in his capacity as an employee/officer of Grand Duke. There are no allegations that Martin did anything outside the scope of his employment that would give rise to personal liability. Martin concludes that, in his individual capacity, he owed no duty of care to Michael, and thus, there is no actionable negligence.
*192 A defendant is entitled to summary judgment if, upon all the papers and proof submitted, he establishes a defense sufficient to warrant judgment as a matter of law. (CPLR 3212 [b].) The burden then shifts to plaintiff to provide evidence in admissible form sufficient to establish a genuine issue of material fact. (Zuckerman v City of New York, 49 NY2d 557.) On a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. (Matter of Benincasa v Garrubbo, 141 AD2d 636.)
First, with respect to the negligent misrepresentation claim, plaintiffs have alleged facts which, if taken as true, would establish a prima facie case of negligent misrepresentation. It is well settled that this cause of action exists outside the commercial context, and that “misrepresentation * * * may be asserted as grounds for recovery in personal injury litigation as well.” (Heard v City of New York, 82 NY2d 66, 73.)
“There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.” (Heard, supra at 74, quoting International Prods. Co. v Erie R.R. Co., 244 NY 331, 338.)
The Court in Heard placed great emphasis on the element of reliance. It held that a prima facie case is clearly established when “one familiar with a hazard offers direct assurances of safety to one who is unfamiliar with the hazard and who foreseeably relies upon those assurances.” (Heard, supra at 74.) Similarly, the Court found potential liability when one party had exclusive control over the information and purported to have investigated the matter before responding.
Here, plaintiffs allege that Martin, in response to a specific question regarding security, instructed the campers that it was not necessary to lock their doors because there would be monitors and patrols throughout the night in the hallways of the dormitory. This allegation is evidenced by Michael’s deposition testimony and the affidavit of Michael’s roommate in the dormitory, Christopher Costa, annexed to plaintiffs’ opposition papers. Martin did not contradict this testimony in his own *193 deposition. He merely stated, “I don’t recall if anyone spoke to me about security that day. It would not be part of the orientation.” (Examination before trial of Richard Martin, dated Nov. 12, 2001, at 71.) On this evidence, a jury could find that Michael relied on an assurance of adequate security given by Martin, that such reliance was foreseeable and reasonable given Martin’s superior, if not exclusive, knowledge of the matter, and that Michael’s consequent failure to lock his door was a substantial factor in causing his injuries.
Martin asserts that he had no personal duty to the campers. His defense seems to rest on the notion that an individual can avoid personal liability for his actions if such actions were performed in the actor’s professional capacity, in the course of his employment, and on behalf of the employing entity. However, Martin has cited no authority, and this court has found none, in support of this proposition. Scope of employment is the wrong inquiry, here, as it relates only to the employer’s vicarious liability for the negligent acts of the employee, and not to the employee’s own primary liability.
It is beyond question that an individual may be held liable for his own affirmative acts of negligence, whether or not such acts are within the scope of his employment. Upon the evidence presented, it can be reasonably inferred that Martin knew that his instructions would be relied upon, and the court could find, pursuant to the rule in Heard, that Martin was under a duty to exercise reasonable care in answering questions regarding campus security. Accordingly, a jury could find that Martin’s speech was an affirmative act of negligence for which he may be held personally liable.
Plaintiffs second claim is based, not on malfeasance, but on nonfeasance, namely, Martin’s alleged failure to provide adequate security. Liability for an act of omission rests on the existence of a duty to act. (See, generally, Febesh v Elcejay Inn Corp., 157 AD2d 102.) Martin asserts that the duty to provide security to campers belonged to the camp, Grand Duke and Post, and that he personally had no such duty. He argues, in essence, that he had neither the “special relationship” (see, e.g., Reyes v City of New York, 238 AD2d 563) nor landowner status (see, e.g., Nallan v Helmsley-Spear, Inc., 50 NY2d 507) from which such duty arises.
This case presents the novel question of whether an individual, by virtue of his employment in an organization charged with the care of members or third parties, assumes a “special relationship” with such charges, so as to undertake a personal *194 duty for their care. The parties have cited, and the court has found, no case law addressing this issue. In the absence of controlling authority, the court declines to create personal liability solely on the basis of employment in an organization that provides care or personal service.
However, the facts of this case suggest an alternative basis for imposing duty. New York recognizes the duty of one who voluntarily assumes the care of another. “[E]ven when no original duty is owed to the plaintiff to undertake affirmative action, once it is voluntarily undertaken, it must be performed with due care.” (Parvi v City of Kingston, 41 NY2d 553, 559; see also, Wolf v City of New York, 39 NY2d 568; Moch Co. v Rensselaer Water Co., 247 NY 160.) Restatement (Second) of Torts § 324 states:
“One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
“(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor’s charge, or
“(b) the actor’s discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.”
The test is “whether a defendant’s conduct has placed another in a more vulnerable position than he or she would have been in had the defendant done nothing,” or, put another way, whether defendant’s conduct enhanced the risk, created a new risk, or induced plaintiff to forego some opportunity to avoid risk. (Ward v Edinburg Mar., 293 AD2d 887, 888-889; see also Moch Co. v Rensselaer Water Co., supra.)
In this case, the question is whether Martin’s alleged statements, that there would be security patrols or guards and that it was unnecessary to lock the dormitory doors, constituted a voluntary undertaking to personally provide such protection. Stated differently, did the alleged statements enhance Michael’s risk, create a new risk, or induce Michael to forego some opportunity to avoid risk (such as locking his door)?
It should be noted that this claim of negligence by omission is analytically distinct from the negligent misrepresentation claim, although it relies on much the same proof. The difference is that, in the negligent misrepresentation claim, the relevant duty is to speak accurately, and the breach lies in failure to reasonably verify the facts before speaking. Theoretically, if *195 Martin took reasonable care to speak accurately as to the expected level of security, personal liability for negligent misrepresentation might be defeated, even if such expectation were not met. With respect to negligence by omission, however, the duty is to act, with due care, once one undertakes to act. Here, even if Martin spoke accurately, Martin could be found personally liable, if he were deemed to have undertaken to provide protection and failed to use reasonable care in doing so.
No evidence in the record permits a finding that Martin undertook personal responsibility to provide security to campers. Michael stated in his deposition,
“He said that there would be one security office somewhere on the premises and then they would have guys walking up and down the halls. And at that time one parent asked if there were going to be any keys issued, and he said no, that it was fine. If you wanted to lock your door, you could, but it was not necessary because there would be certain security measures.”
Christopher Costa’s affidavit was essentially the same. The only credible interpretation of this testimony is that Martin did not volunteer to provide security himself, but rather attributed such responsibility to the camp or, perhaps, to Post. Martin neither began to act, nor promised to act. To the extent that Martin’s statement enhanced Michael’s risk or caused him to forego an opportunity to avoid risk, the remedy lies in a claim of negligent misrepresentation, not in imposing a duty where none was assumed.
Martin has shown that he is entitled to judgment as a matter of law on the general negligence claim, based on the absence of a personal duty to provide protection to plaintiff. Plaintiffs have failed to submit evidence sufficient to raise an issue of fact requiring a trial on that claim. (See Zuckerman v City of New York, 49 NY2d 557.) However, Martin has not shown that he is entitled to judgment on the negligent misrepresentation claim. In fact, the record supports a prima facie case. Failure of the moving party to make the requisite showing requires denial of the motion, regardless of the sufficiency of the opposing papers. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851.) Accordingly, it is ordered that the cross motion of defendant Richard Martin, individually, for summary judgment pursuant to CPLR 3212 is granted in part, with respect to the claim of general negligence, as discussed above. It is further *196 ordered that the cross motion of defendant Richard Martin, individually, for summary judgment pursuant to CPLR 3212 is denied in part, with respect to the claim of negligent misrepresentation.