██ Maria E. Kelso, Individually and as Executor of Jean E. Kelso, Deceased, Respondent, v Wall Street Funding et al., Defendants, and Countrywide Home Loans, Inc., et al., Appellants. [942 NYS2d 248]—

Spain, J.P. Appeal from an order of the Supreme Court (Peckham, J.), entered December 21, 2010 in Delaware County, which partially denied a motion by defendants Countrywide Home Loans, Inc. and Bank of America, N.A. for summary judgment dismissing the complaint against them.

Plaintiff and her mother-in-law, decedent Jean Kelso, were joint owners with rights of survivorship of two parcels of real property located in the Town of Meredith, Delaware County. In 2005, plaintiff entered into a transaction with defendant Encore Credit Corporation in which, according to plaintiff, it was agreed that title to both parcels of property would be transferred into plaintiff's name alone and that plaintiff would then borrow funds from Encore secured by an adjustable-rate mortgage on both parcels. The transaction was completed in December 2005 with the assistance of the abstract and title company defendants.

Both the legal description of the property in plaintiff's deed and the description of the property in the mortgage documents, however, identified only one of the parcels. In January 2006, plaintiff was apprised of this fact when she received a letter from the Delaware County Real Property Tax Service noting the discrepancy between the Real Property Transfer Report filed with her deed, which identified both parcels, and the deed description, which described just one of the parcels. According to plaintiff, she began repeatedly contacting Encore as well as the abstract and title companies involved in the mortgage transaction in an unsuccessful attempt to obtain corrected documents.

In March 2006, plaintiff's mortgage was assigned to defendant Countrywide Home Loans, Inc., and Countrywide was thereafter acquired by defendant Bank of America, N.A. (hereinafter collectively referred to as defendants). Plaintiff then contacted Countrywide seeking help in resolving her title issues. She met with a Countrywide representative in June 2008 and fully explained the situation, at which point she was allegedly assured that her title issues would be rectified.

In March 2009, plaintiff commenced this action asserting, as is relevant here, that defendants were negligent in failing to obtain corrected documents for her after assuring her that they would do so, and that their failure caused her to incur damages in the form of, among other things, excessive interest fees.* Defendants moved for summary judgment dismissing the complaint against them. Supreme Court partially denied the motion and defendants appeal.

Finding that defendants owed no duty to plaintiff independent of the parties' contract as debtor and creditor, we agree that they were entitled to full summary judgment. A debtor/creditor relationship such as that between plaintiff and defendants is not sufficient, standing alone, to give rise to a special relationship that would carry with it a duty in tort (see *Landes v Sullivan*, 235 AD2d 657, 660 [1997]). It is undisputed that defendants played no role in creating the deed error underlying plaintiff's claims for damages. Nevertheless, plaintiff argues that defendants assumed a duty of care, relying on our precedents stating that such a duty arises where a defendant undertakes a course of conduct upon which a plaintiff relies and, as a result, the plaintiff is placed "in a more vulnerable position than [the] plaintiff would have been in had [the] defendant done nothing" (*Heard v City of New York*, 82 NY2d 66, 72 [1993], citing *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 522 [1980]). We hold that defendants' actions here in attempting to assist plaintiff in resolving a title problem that arose prior to the inception of the parties' relationship are insufficient to support an assumed duty of care.

First, plaintiff has failed to allege facts that could support the imposition of an assumed duty stemming from any promise upon which plaintiff reasonably and detrimentally relied (see *Heard v City of New York*, 82 NY2d at 72). The record demonstrates, and plaintiff does not dispute, that she was cognizant of the defect in the deed at issue in January 2006 and advised by

---

* In April 2009, plaintiff entered into a loan modification agreement with defendants pursuant to which her interest rate and monthly payments were reduced.

the Delaware County Real Property Tax Service on how she might remedy the situation with a quit claim deed. Plaintiff opted not to follow that advice, but instead contacted Countywide, among others, asking for assistance in remedying the situation. In a letter from plaintiff to Countrywide dated June 4, 2008, plaintiff acknowledges that the source of her problem was an error made by the title company and closing attorney in 2005, complains that she has been calling Countrywide since 2006 seeking to correct the error and demands that Countrywide immediately take steps to remedy the error. Countrywide's July 16, 2008 letter in reply states that plaintiff was advised in 2006 to contact the closing attorney or title company that prepared the loan documents and that Countrywide would then work with them to resolve the problem, but that she should hire a real estate attorney to correct the property description in the deed. The letter also indicates that plaintiff had refused to take this advice. Although the letter expresses Countrywide's intent to resubmit the issue to its document corrections department, it clearly qualifies this offer of help by informing plaintiff that it could not modify the property description on the mortgage without the assistance of the title company, that its efforts to contact the closing attorney and the title company had been unsuccessful, and that, although it had contacted the title insurance underwriter, it had not yet received a response. Finally, the letter concludes that Countrywide would "be happy to work with you and your real estate attorney" to remedy the problem.

This proof, offered by defendants in support of their motion for summary judgment, establishes that defendants did not promise that they would remedy the defect for plaintiff but, instead, offered to make efforts on her behalf and to continue to work with her to correct the problem. This responsive behavior to a customer's request for assistance cannot be equated with "launch[ing] . . . [an] instrument of harm" of the type that Judge Cardozo contemplated as necessary to create a legal duty where none previously existed (*Moch Co. v Rensselaer Water Co.*, 247 NY at 168; *see Santiago v United Cerebral Palsy of Ulster County, Inc.*, 77 AD3d 1270, 1272-1273 [2010]).

The only suggestion that defendants promised plaintiff that they would undertake the responsibility of correcting plaintiff's title problems is found in plaintiff's affidavit, in which she states that, on June 18, 2008, she "was given oral assurances that the problems would be rectified." Defendants do not directly dispute the fact that this conversation took place. However, given the clear language found in Countrywide's July 16, 2008 letter to plaintiff—written less than a month after this vague, alleged

promise—indicating that Countrywide could not remedy the problem without the title company and clearly offering only to "work with" plaintiff to resolve the issue, plaintiff could not reasonably have relied on an alleged oral promise that Countrywide had assumed responsibility of correcting her title issues (*see Heard v City of New York*, 82 NY2d at 75-76). Further, because defendants lacked any control over the third parties who created the problem and who could produce a corrected deed, plaintiff could not have reasonably believed that defendants would have assumed the obligation to single-handedly resolve her title issues (*see Vogel v West Mountain Corp.*, 97 AD2d 46, 50 [1983]).

Finally, even if some assurance was made to plaintiff by Countrywide in June 2008 and, further, assuming for the sake of argument that plaintiff would have been justified in relying on that assurance, plaintiff fails to allege how such reliance placed her in a more vulnerable position, as is necessary to impose tort liability for an assumed duty (*see Castiglione v Village of Ellenville*, 291 AD2d 769, 770 [2002], *lv denied* 98 NY 604 [2002]). Lacking is any evidence that defendants "enhanced the risk [plaintiff] faced, created a new risk [or] induced [her] to forego some opportunity to avoid risk" (*Heard v City of New York*, 82 NY2d at 73; *see Ward v Edinburg Mar.*, 293 AD2d 887, 889 [2002]). Indeed, Countrywide urged plaintiff to seek legal representation to correct the error in 2006. She failed to heed that advice at that time and the alleged oral representation made to her in 2008 appears not to have altered her chosen course of conduct in any manner. Although plaintiff asserts that defendants' conduct prevented her from obtaining a lower interest rate, she fails to explain how that alleged damage flowed from her reliance on conduct of defendants, rather than the initial error made in her deed or her own decision not to engage legal counsel to rectify the problem.

Malone Jr., Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially denied the motion of defendants Countrywide Home Loans, Inc. and Bank of America, N.A.; motion granted in its entirety, summary judgment awarded to said defendants and complaint dismissed against them; and, as so modified, affirmed.