Schmitt v Artforum Intl. Mag., Inc. (2019 NY Slip Op 09352)





Schmitt v Artforum Intl. Mag., Inc.


2019 NY Slip Op 09352


Decided on December 26, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 26, 2019

Sweeny, J.P., Tom, Mazzarelli, Oing, Singh, JJ.


10080 159496/17

[*1] Amanda Schmitt, Plaintiff-Appellant,
v
Artforum International Magazine, Inc., et al., Defendants-Respondents.


Clarick Gueron Reisbaum, New York (Emily Reisbaum of counsel), for appellant.
Proskauer Rose LLP, New York (Bettina B. Plevan of counsel), for Artforum International Magazine, Inc., respondent.
Littler Mendelson P.C., New York (Margaret L. Watson of counsel), for Knight Landesman, respondent.



Judgment, Supreme Court, New York County (Frank P. Nervo, J.), entered January 2, 2019, dismissing the complaint, pursuant to an order same court and Justice, entered December 24, 2018, which granted defendants' motions to dismiss the complaint pursuant to CPLR 3211(a)(7), modified, on the law, the judgment against defendant Artforum International Magazine, Inc. vacated, Artforum's motion to dismiss the claims alleging retaliation by Artforum against plaintiff in violation of the New York City Human Rights Law (Administrative Code of the City of NY § 8-107[7]) and promissory estoppel denied, and the judgment is otherwise affirmed, without costs.
Plaintiff is a New York City curator and art fair director who began her career in 2009 at the age of 21 years, as a recent arrival from Wisconsin, with her employment at defendant Artforum. Artforum publishes a periodical that has significant influence in the art world arising in part from its role as a major advertising vehicle for participants in the art trade but also because of the various events that it sponsors, which serve as a forum for the leading participants in the art trade. The complaint as well as record materials indicate that defendant Knight Landesman is very influential and highly connected in the industry, and was one of Artforum's four co-publishers. In this capacity at Artforum, he exercised supervisory authority over plaintiff and others.
Plaintiff's complaint alleges an extended period of sexual harassment of plaintiff by defendant Landesman about which defendant Artforum became informed and allegedly acted adversely to her in the closely-knit commercial art world with consequences including reputational harm. Shortly after plaintiff's employment with Artforum commenced, Landesman, who was then in his late 50s, subjected her to uncomfortable sexual advances. This continued while she was employed by Artforum and, despite her pleas that Landesman end that conduct, continued for several years after she left Artforum until she filed this action. Plaintiff explained that this was her first office job, and that she did not know how to respond to Landesman's sexual advances or how to fight back. Since Landesman was her supervisor and she was aware of his power in the art world, she was afraid to confront him or to risk her position at Artforum. Hence, she concluded that she was forced to put up with the harassment. Plaintiff claims that it became apparent to her that Landesman's proclivities were known at Artforum since, when the subject arose, people often rolled their eyes and said, "[W]ell, that's just how Knight is."
Plaintiff left Artforum in August 2012 but, she alleges, Landesman's unwanted attentions and communications to her did not end. Rather, they expanded in person and by emails that are included in the record. The nature of the harassment and Landesman's ongoing sexual overtures [*2]are amply supported by the record for purposes of CPLR 3211. Plaintiff alleged that given her youth and lack of work experience, although she was disgusted, ashamed and confused, Landesman's goodwill was still critical to her professional advancement, which required her to endure his harassment. Landesman's connection with defendant Artforum was also an important factor in plaintiff's reticence in seeking legal relief. The complaint and supporting materials in the record establish, again for purposes of a CPLR 3211(a)(7) dismissal motion, the need for plaintiff to maintain good relations with Artforum, both as Landesman's publishing vehicle and because of its own seminal importance with respect to advancing or ruining careers such as plaintiff's.
Artforum's influence was underscored for plaintiff when in December 2012 she was invited by Artforum to what the complaint characterizes as a prestigious dinner of insiders at an event in Miami where she participated as an exhibitor. At the time plaintiff no longer worked for Artforum. Landesman took the opportunity to email plaintiff again from an Artforum account with the subject line "Teacher*Student," where he gushed, "Good to have you at our dinner in the Miami moonlight," fantasized about a kiss, and urged her to "[g]ive yourself to me! ALL of you=to all of me, Our own deeply secret, deeply special, no boundaries, in friendship." This email was of a kind with a history of prior emails, the explicit details of which are not necessary to reiterate in this decision.
Plaintiff alleges that she thereafter tried to keep her distance from Landesman. Nevertheless, she felt that it was professionally necessary to attend an Artforum dinner, which was attended by artists, dealers and curators, at its, and Landesman's, invitation in March 2013. He perpetuated his sexual harassment, now in front of clients and potential employers, and afterward emailed her again from an Artforum account where he professed his enjoyment at being her "teacher," but chided her with a "B- on your delivery to me." Plaintiff alleges that while she was seeking new employment during 2013, Landesman, knowing that his goodwill and status at Artforum were critical, took advantage of the opportunity by sending numerous increasingly sexually explicit harassing emails and texts included in the record, which she tried to ignore.
As a consequence of the emotional distress this was causing her, plaintiff claims she had to start seeing a therapist in October 2014. Nevertheless, because of the nature of the industry, she could not avoid running into Landesman at events over the next two years. On those occasions he took advantage of the opportunity to whisper suggestions about masturbation and spanking while publicly touching her hands, waist, buttocks and hips without her consent.
In April 2016 and thereafter, he texted her more explicit materials linked to explicit videos and web articles, and chided her when she failed to respond. When plaintiff saw Landesman in Artforum's premises in May 2016, she implored him to stop the harassment, which was harming her emotionally and professionally. In response he rubbed her calf with his shoeless foot and suggested that she request permission from her partner for Landesman to continue his conduct towards her. After she left, Landesman emailed her a similar request, eliciting her response that he had to stop the harassment that he had been perpetrating since 2012. In an ambiguous response, Landesman emailed back that they should meet so that they could "get on the same page" and resume their prior "friendliness."
Instead, plaintiff met with Charles Guarino and Danielle McConnell, who published Artforum Magazine along with Landesman, to communicate the harassment and show them some of Landesman's emails. The publishers subsequently advised plaintiff by email that she could contact a lawyer and seek out other targets of Landesman's harassment. Plaintiff responded that she was not seeking monetary relief but only wanted to end the harassment without damage to her career. In response, Guarino promised in writing that Artforum was "taking action to insure that whatever may have transpired never happens again."
Plaintiff alleges that any action taken was minimal and ineffective insofar as Landesman's harassment continued. However, she alleges, it became clear to her that Artforum did take action - but against her, by excluding her from the influential dinners and events which were professionally important in the New York art world to which she had regularly been invited in the past. In the meantime, plaintiff alleges, in reliance on Guarino's and McConnell's promise [*3]that Artforum would take steps to ensure that Landesman's sexual harassment would never happen again, she did not file legal claims for Landesman's conduct, and the limitations periods passed, precluding adequate relief.
Apparently, Artforum's efforts in furtherance of its promise, limited to directing Landesman to engage in therapy and not to contact plaintiff, were unsuccessful and in effect were superficial window dressing. Plaintiff alleges that on May 7, 2017, plaintiff was dining in a Manhattan restaurant with her partner, an academic and professional artist, and Alex Kitnick, an art professor and critic, both of whom appeared regularly in Artforum Magazine, when Landesman, uninvited, appeared, sat down, and harangued her about accusing him unfairly of sexual harassment. The attempted departure of Kitnick, whom Landesman professed was a "dear friend," was physically blocked by Landesman, after which Landesman threatened to reveal "details" to him so that he could "judge" for himself. As described in the complaint, plaintiff was emotionally distraught and fearful of the professional consequences.
In June of 2017, plaintiff finally undertook preliminary legal steps by having an attorney write to Landesman and Artforum, identifying other victims of his sexual harassment, and demanding that the harassment stop but also that what she construed to be retaliation also end. Among other remedies, she demanded reimbursement for her therapy costs, corrective policies including training to address sexual harassment and effective harassment reporting at Artforum but, otherwise, not monetary damages. An attempt at settlement was unsuccessful, plaintiff alleges, when she would not submit to a nondisclosure agreement.
However, as negotiations were ongoing, plaintiff alleges, Artforum conducted an employee meeting at which employees were told that plaintiff's claims involving Landesman were unjust, that she had maintained a consensual and non physical relationship with him, that plaintiff was exaggerating, and that her goal was actually to "try to take down Artforum." During a subsequent statement to an Artnet reporter, Artforum characterized plaintiff's relationship with Landesman as only a close friendship which started after she had left Artforum and stated that her claims were unfounded and were only "an attempt to exploit a relationship that she herself worked hard to create and maintain." Moreover, Artforum stated, in stark contradiction to the nondisclosure agreement on which Artforum had insisted as a condition of settlement, that "we have no wish to silence anyone, nor will we engage in any attempt to do so."
Concurrently, plaintiff alleges, Artforum had been excluding her from its sponsored events that were essential for business development, meeting artists, other curators and other participants in the New York art world and thereby, in effect, freezing her out from the trade. In the present action, plaintiff connects Artforum's exclusionary conduct and its disparaging comments about her experiences and motivation to portray a pattern of its own harassment directed at her in retaliation for having brought these matters to light.
By complaint dated October 25, 2017, plaintiff sued both Artforum and Landesman for retaliation in violation of New York City's Human Rights Law set forth in Administrative Code § 8-107 in a first cause of action. The second cause of action alleged slander and slander per se against both defendants. The third cause of action sounded in gross negligence against only Artforum. The fourth cause of action, again against only Artforum, was for promissory estoppel. Plaintiff claimed defamation and defamation per se against Artforum in the fifth and sixth causes of action. The complaint alleges that Guarino conceded that it was known to them that Landesman had behaved in a similar fashion on prior occasions. The complaint also sets forth information about at least eight other victims of Landesman's sexual harassment who described a similar pattern of suggestive and even explicit conversational overtures by him, explicit emails, groping and inappropriate touching and public humiliation when they declined to respond to him physically. Defendants moved to dismiss under CPLR 3211(a)(7) on the basis that the complaint fails to set forth a cause of action.
Supreme Court granted defendant's CPLR 3211 motions and dismissed the complaint. We reinstate the claims of retaliation against Artforum (but not against Landesman) and promissory estoppel, but affirm the dismissal of the remaining claims.
It is well established that on a motion to dismiss pursuant to CPLR 3211(a)(7), the court must accept as true the plaintiff's factual allegations and afford the plaintiff all favorable [*4]inferences in ascertaining whether the pleadings support relief on the basis of any reasonable view of the facts pled (Aristy-Farer v State of New York, 29 NY3d 501, 509 [2017]). Although the complaint does not set forth adequate grounds for a theory of defamation or slander, Artforum's verbal and written disparagement of plaintiff, especially after she explained her plight and displayed Landesman's emails, combined with allegations that Artforum sought to effectively freeze her out of the close-knit business and professional trade in which she was engaged, adequately set forth retaliation claims under the New York City Human Rights Law (Administrative Code § 8-107[7]) for purposes of CPLR 3211(a)(7).
Administrative Code § 8-107(7) defines as an unlawful discriminatory practice conduct by "any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has," inter alia, "opposed any practice forbidden under this chapter . . . filed a complaint . . . in any proceeding under this chapter . . . commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter . . . " (emphasis added). Section 8-107 includes 31 subsections which set forth a range of contexts in which the discrimination or retaliation would be prohibited. These generally reference employment, housing, places of public accommodation and other discrete activities. As is evident in Supreme Court's findings, the present claim against Artforum does not fit neatly into the categories of this chapter. Nevertheless, that should not require dismissal of the claim against Artforum as a former employer or, alternatively, as the participant in an ongoing economic relationship in the close-knit art industry where plaintiff's prospective business/employment is allegedly being intentionally compromised.
The United States Supreme Court, interpreting the "employment" relationship with reference to § 704(a) of Title VII of the Civil Rights Act of 1964 (42 USC § 2000e-3[a]), found "employment" to be sufficiently ambiguous in that statute that it could also be applied to a former employer-employee relationship so as to bring the retaliation or discrimination within the statutory reach (Robinson v Shell Oil Co., 519 US 337, 339, 346 [1997]). In an earlier ruling, the Second Circuit had found the term "employment" to be sufficiently elastic that the alleged harm need not occur precisely during the current employment relationship (Pantchenko v C.B. Dolge Co., Inc., 581 F2d 1052 [2d Cir 1978]). To respect the legislative goal of shielding "employees" from retaliatory or discriminatory harm and affording them a legal remedy in the event of "employer" transgressions, the Second Circuit applied the terminology liberally to past, present or prospective employers rather than requiring a parsimonious literalness (id. at 1055).
Hence, there is jurisprudential grounding for expanding the boundaries of the employment context that is central to discrimination and retaliation claims in section 8-107(7) to the extent necessary to provide redress when there exists some nexus between the retaliatory harm alleged and a relationship characterized in some manner as one of employment, past or present. This Court acknowledged as much in a decision where dismissal nevertheless was required because the plaintiff was a partner rather than an employer, which we construed to be a fundamentally different relationship (cf. Ballen-Stier v Hahn & Hessen, 284 AD2d 263 [1st Dept 2001], lv dismissed 97 NY2d 699 [2002]).
Similar reasoning can be justified in reading some expansiveness into the undefined and similarly ambiguous term "employment" for remedying retaliation under Administrative Code section 8-107(7). However, some safeguards are necessary to avoid the unintended consequence of allowing a lawsuit against a party who happens to be a plaintiff's former employer on a retaliation theory when there is no reasonable connection between the harm alleged and that economic relationship. The plaintiff, if not a current employee, should be shown to occupy a subordinate position in an ongoing economic relationship that is threatened by the "employer's" retaliation, and the nature of the retaliation itself should have a demonstrable nexus to the harm being alleged. These are factual issues which can be explored outside of the context of the present challenge to the pleadings. Such an approach comports with the directive in Albunio v City of New York (16 NY3d 472 [2011]) that the New York City Human Rights Law should be construed by its terms as broadly as is reasonable, with some license given for how its terms are to be construed in accordance with that principle. In Albunio, the plaintiffs claimed that their careers were adversely impacted for having opposed a superior officer's discrimination against [*5]another officer whom the supervising officer believed to be gay. Although one of the plaintiffs had not formally filed a complaint claiming retaliation, the evidence indicated that her career, in fact, had been adversely impacted and, interpreting the City Human Rights Law broadly, the Court of Appeals found that the jury could draw an inference of retaliation against her on the basis of the proof submitted. The Albunio principle, however, requires that even a broad construction demands that for a retaliation claim, the facts must demonstrate that the defendant's actions and the position in which the plaintiff is consequentially placed exceed what would reasonably be expected. This must be a "difference in treatment [that is] attributable to retaliation," as we recognized in affirming dismissal in Willams v New York City Hous. Auth. (61 AD3d 62, 72 [1st Dept 2009], lv denied 13 NY3d 702 [2009]).
These facts, as pleaded and supplemented by materials in the record, satisfy that requirement for purposes of stating a cause of action for retaliation against Artforum. Plaintiff's employment in her career started with Artforum, where Landesman, allegedly known to engage in sexual harassment at that time, was her supervisor. Landesman, a publisher, supervisory employee and part owner of Artforum, allegedly engaged in extensive sexual harassment during those early years, which continued for several years thereafter, during which he even portrayed himself as her "teacher." Even if his meaning was libidinous rather than supervisory as time went on, he nevertheless underscored the extent to which plaintiff remained professionally and economically tethered to him, and hence to Artforum, due to their influence in the art world, at least for purposes of CPLR 3211(a)(7). During that latter time period, even after plaintiff started to develop her own business as a curator and art dealer, Landesman, whose influence in the New York art world provided significant economic and reputational benefits to Artforum, still maintained continuing and regular contact with plaintiff, albeit holding himself out as a career advisor who could influence her career. This is amply documented in the record.
During those same years, Artforum also maintained a business and professional relationship with plaintiff by regularly inviting her to the events that it sponsored. The complaint sets forth how necessary this kind of relationship was for her business success. It was at such events, plaintiff claims, that she met artists, curators, and other professionals in the field, networking that was essential to her own professional and business success. Although the facts as pleaded do not allow for Artforum's vicarious liability for its employee's misconduct, they do provide a plausible context for explaining why and how it reacted as it did, for purposes of this CPLR 3211(a)(7) motion, when plaintiff more formally advanced her complaint of Landesman's sexual harassment following his ambiguously threatening confrontation of plaintiff in the restaurant.
As pleaded, then, this was an ongoing seamless affiliation in which plaintiff, by virtue of the extent and nature of Artforum's influence, necessarily remained in a subordinate economic position to it in its role as a publisher and as a professional lodestar. The break came, as alleged in the complaint, when, having relied on her established relationship with Artforum, plaintiff first professionally requested the publishers' assistance in ending Landesman's emotionally and professionally damaging behavior, then, when that allegedly failed, she took the additional step of seeking legal assistance. Whether we deem the former employment to extend to these circumstances for purposes of pleading retaliation, or we construe the ongoing quasi-employment economic relationship that bound plaintiff to Artforum to be an adequate criterion, these facts as pleaded sufficiently make out a claim of retaliation against Artforum within the reach of § 8-107(7) for purposes of CPLR 3211.
The complaint sets forth two categories of retaliatory responses by Artforum, which, plaintiff alleges, harmed her professionally and, relatedly, from a business perspective. As already noted, she alleges that Artforum essentially froze her out of the gatherings sponsored by it where the New York art world congregated, thereby diminishing her ability to sustain success in that field. In effect, she argues in sum and substance, Artforum, influential in the art world, could help make or break her career.
Magnifying this alleged harm, she further claims, Artforum's characterizations of her conduct, motivations and goals presented an attack on her professional and personal integrity, which, while technically not defamatory, nevertheless besmirched her in a manner that could [*6]harm her professionally. As alleged, Artforum's accusations form a pattern: to its employees, it characterized her claims as "unjust"; it trivialized her interactions with Landesman as "consensual and nonphysical"; argued that she was "try[ing] to take down Artforum"; conducted private meetings with its employees who had shared an Instagram post equating Landesman with Harvey Weinstein, itself ostensibly coercive, during which plaintiff's claims were described as disproportionate to Landesman's actual conduct; threatened other employees who claimed to have been subjected to Landesman's sexual harassment with reputational harm and even firing; and described plaintiff's claims to an Artnet reporter as unfounded and "an attempt to exploit a relationship that she herself worked hard to create and maintain." For purposes of CPLR 3211(a)(7), plaintiff has adequately pleaded that these actions and statements were in retaliation for pursuing her right to stop the sexual harassment by a person economically and professionally important to Artforum and influential in the industry in which Artforum was a major player.
The retaliation claim against Landesman, however, fails on the absence of an allegation of actual retaliation. Plaintiff therein relies on the mere allegation that when Landesman confronted plaintiff in the restaurant he "threaten[ed] to discuss the details'" with Kitnick and her partner, which she construes as a threat to slander her. The complaint alleges no further conduct on Landesman's part, nor is there any reliable means to know what "details" were in issue. Notwithstanding the characterization in the complaint, these were not threats in any explicit sense notwithstanding possible, albeit unstated and vague, implications of his reaction to her accusation. Although plaintiff argues that Landesman in doing so was acting within the scope of his employment with Artforum, the facts as alleged show no more than Landesman's personal defensive hostility.
We reinstate the claim for promissory estoppel. The facts as pleaded show that plaintiff, relying on her ongoing professional and business relationship with Artforum, sought the personal help of two of its co-publishers in restraining the sexual harassment of its third co-publisher so as to avoid further emotional and professional harm to her; conceding their awareness of Landsman's proclivities, they professed to be concerned for her emotionally and professionally and promised that she would never be subjected to the damaging behavior again without harm to her professionally; it was reasonable that plaintiff relied on their assurances and their ostensible good faith; they addressed the problem at best superficially and ultimately unsuccessfully; when she finally retained legal counsel, she still sought only to end the behavior rather than monetary remedies; and, as a consequence of this reliance, potential legal remedies became time-barred. These allegations, supported by record documentation, sufficiently set forth a cause of action for promissory estoppel so as to survive dismissal under CPLR 3211(a)(7) (Braddock v Braddock, 60 AD3d 84, 95 [1st Dept 2009], appeal withdrawn 12 NY3d 780 [2009]).
Although evolving caselaw indicates that a defendant's public accusation of a plaintiff of fabricating claims of sexual harassment may support a theory of defamation, importance must still be placed on the allegedly slanderous words and whether they are provably false factual statements, in order to be actionable. Subjective statements of opinion, in contrast to objectively understandable statements of fact, are not actionable as such (Mann v Abel, 10 NY3d 271 [2008], cert denied 555 US 1170 [2009]). The verbal and written texts on which plaintiff relies in the complaint fall short of defamation, even if they ultimately may be supportive of the retaliation claim against Artforum. Plaintiff claims that at the employee meeting, Artforum described her claims as "unjust." This is subjective opinion. Accepting the allegation as true, Artforum also described plaintiff's relationship with Landesman as "consensual and non physical." This would seem to be accurate in a technical sense. Plaintiff contends that Guarino told the employees that plaintiff was campaigning to "take down Artforum." The phrase "take down" is a figure of speech, perhaps even hyperbolic, amenable to several possible meanings, making it innately not falsifiable. Moreover, in context it seems to be intended as a statement of opinion (Mann, 10 NY2d at 276-277). The complaint alleges that Artforum wrote on its own website and communicated to Artnet for publication in that medium that plaintiff's sexual harassment claim "appears to be unfounded, and seems to be an attempt to exploit a relationship that she herself worked hard to create and maintain." While possibly disingenuous, this carefully hedged phrasing also does not present falsifiable statements of fact; how something "appears" and what [*7]it "seems" to be are innately subjective. Even if the qualifying verb forms had been omitted, the statements are more in the nature of defensive statements of conjecture that would be classifiable as opinion rather than provably false facts (El-Amine v Avon Prods., 293 AD2d 283 [1st Dept 2002]).
Similarly, Landesman's statements that plaintiff has "unfairly accused him" and that they needed to "help her understand the reality" do not suffice since they do not convey falsifiable facts. Fairness is innately subjective, and an expression of Landesman's opinion, whether realistic or not and whether disingenuous or not, and importuning their help in clarifying "reality" for plaintiff cannot be reasonably interpreted as conveying false factual content.
Since the statements on which plaintiff relies are neither slander nor defamation, we need not reach the per se claims. Even if we did, however, the complaint does not set forth the requisite damages arising from these statements.
Even if Artforum might be construed to have assumed a moral obligation to plaintiff to intercede with Landesman to end his offensive conduct, the complaint fails to set forth a legal duty of care owed by Artforum to plaintiff, a breach of that duty, foreseeability and Artforum's proximate causation in relation to the confrontation by Landesman, such as would sustain a negligence theory of harm (Hunt v Scotia-Glenville Cent. School Dist., 92 AD2d 680 [3d Dept 1983]). Nor do these facts establish a basis to imply a duty of care by Artforum owed to plaintiff as urged by the dissent. The promissory estoppel claim rests on a reliance theory - plaintiff allegedly forebore time-limited legal rights on the basis of an assurance that Artforum's management would induce Landesman to change his conduct towards plaintiff, in which they did not succeed - which differs from Artforum's assumption of a duty of care towards plaintiff. As Supreme Court found, the pleadings show, at most, that Landesman's statements during the restaurant confrontation were his own, for his own purposes while he was not under Artforum's control, that they were not made to advance Artforum's interests, and that he was the sole proximate cause of any alleged harm resulting therefrom. Nor do the facts as pleaded establish a basis to impute to Artforum Landesman's misconduct after plaintiff left its
employment, and the limitations period had long lapsed since she left its employment.
All concur except Mazzarelli, J.
who dissents in part in a
memorandum as follows:




MAZZARELLI, J. (dissenting in part)


I dissent from that part of the majority's decision that affirms the dismissal of plaintiff's claim for gross negligence. The majority acknowledges that plaintiff reasonably relied to her detriment on representations made by Artforum that it would take action to protect her from defendant Landesman's harassment. However, the promise implied from those representations, that the majority holds Artforum is estopped from disavowing, is also the precise nucleus of the duty of care that plaintiff alleges Artforum created, and then willfully breached, when it failed to act. Accordingly, it is inconsistent to dismiss the gross negligence claim.
The basis for both causes of action is a meeting plaintiff had in June 2016 with two of Artforum's co-publishers at Artforum's office. Although the meeting took place four years after plaintiff left Artforum's employ, it followed a persistent campaign of sexual harassment against plaintiff pursued by Landesman after she left the company. According to the complaint, plaintiff told the publishers about Landesman's long history of sexually harassing her, showed them some of the recent text messages he had sent her, and asked them to prevail upon Landesman to stop. Plaintiff explained that her goal was not monetary, but solely to have Landesman stop without seeking retribution against her. The publishers expressed horror at Landesman's conduct, and one of them confirmed that other young women had previously complained to him about Landesman's sexual harassment. Plaintiff followed up with an email summarizing the meeting, and received an emailed response assuring her that the publishers would be "taking action to insure that whatever may have transpired never happens again." Artforum told Landesman to see a therapist, not to approach plaintiff, and not to meet female employees alone or bring them to [*8]industry events. However, it took no steps to enforce these instructions. Instead, Artforum continued to employ Landesman and provide him with a private office. Moreover, plaintiff alleges that, contrary to these assurances to her, Artforum directly retaliated against her by excluding her from its events and dinners, including functions to which she had already been invited.
Much like a promise can be implied when the promisee relies on the words or acts of a promisor, a duty of care can be implied when a person relies on another person's commitment to assume the duty (see Heard v City of New York, 82 NY2d 66, 72 [1993]). The majority's attempt to differentiate between the reliance element of the promissory estoppel cause of action and that of the gross negligence claim, by emphasizing plaintiff's forbearance from asserting certain legal rights in alleging the former, ignores that a negligence claim can, as here, be grounded on a plaintiff's reliance on another party's actions such that she is lulled into a false sense of security (id. at 72-73, citing Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 522 [1980]). Here, a promise was implied, and a willingness to undertake a duty conveyed, when Artforum told plaintiff in the June 2016 meeting that it would be "taking action." If, as the majority concedes, it was reasonable for plaintiff to rely on that statement for purposes of creating an implied promise by Artforum, then that same reliance could have created a duty by Artforum to act with due care by reassuring plaintiff that she no longer needed to fear being harassed by Landesman. Further, Artforum's statement implied that it had the ability and means to control Landesman. Thus, plaintiff adequately alleged that Artforum had a duty to prevent Landesman from harassing her, including confronting her in social settings such as the restaurant meeting where he publicly accused her of "unfairly accus[ing]" him. Further, given Artforum's stated ability to control Landesman, the majority's conclusion that the complaint establishes that Landesman was the sole proximate cause of plaintiff's harm is unfounded.
For the foregoing reasons, I would reinstate plaintiff's gross negligence claim.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 26, 2019
CLERK